## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| **RICHARD KONTAS,** *individually and on behalf of all others similarly situated,* | |
| Plaintiff, | **Civil Action No.** |
| v. | **CLASS-ACTION COMPLAINT** |
| **THIRD VICTORY MEDIA, LLC** and **INTEREST MEDIA, INC.** | **JURY TRIAL DEMANDED** |
| Defendants. | |

### CLASS-ACTION COMPLAINT

AND NOW, Plaintiff, Richard Kontas ("Kontas" or "Plaintiff"), individually and on behalf of all others similarly situated, files this Class-Action Complaint against Defendants Third Victory Media, LLC ("TVM") and Interest Media, Inc. ("Interest", and with TVM "Defendants"). In support thereof, Plaintiff states as follows:

### NATURE OF THE CASE

1.     Plaintiff brings this action seeking damages and any other available legal or equitable remedies resulting from the unlawful actions of Defendants, who violated Plaintiff's rights by placing two or more solicitation calls to Plaintiff's number while such number was registered on the Do Not Call Registry. Those acts and omissions, which are described at length herein, were in violation of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227, *et seq.* and the TCPA's corresponding regulations promulgated by the Federal Communications Commission ("FCC") at 47 C.F.R. § 64.1200 *et seq.*

## BACKGROUND ON THE TCPA

2.      In 1991, after passage with bipartisan support in Congress, President George H.W. Bush signed the TCPA into law, to protect consumers' privacy rights- specifically, the right to be left alone from unwanted telemarketing calls.

3.      A leading sponsor of the TCPA described telemarketing "robocalls" the "scourge of modern civilization." 137 Cong. Rec. 30821 (1991).

4.      The TCPA, through the accompanying FCC regulations, 47 C.F.R. § 64.1200(c) et seq., affords special protections for "residential subscribers" who register their phone numbers on the National Do Not Call Registry.

5.      Since 2003, persons who register cell phone numbers on the Do Not Call registry have been considered to be "residential subscribers" for the purpose of 227(c)(5) and the Do Not Call registry. *In Re Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 18 F.C.C. Rcd. 14014, 14039 (2003) ("we will presume wireless subscribers who ask to be put on the national do-not-call list to be 'residential subscribers.'")

6.      47 U.S.C. § 227(c)(5) and 47 C.F.R. § 64.1200(c) provide that each person who receives more than one call within a 12-month period on their phone, where that called party did not provide express written consent upon a clear and conspicuous disclosure from the telemarketer, after the phone number was registered on the National Do Not Call Registry for more than 31 days is entitled to recover a penalty of $500 per call, and up to $1,500 per call if the TCPA is willfully or knowingly violated.

7.      The TCPA also provides protections for persons who receive prerecorded or artificial voice calls without the caller (or the company acting on the caller's behalf) first obtaining the recipient's prior express written consent to receive such calls. *See* 47 U.S.C. § 227(b)(1); 47 C.F.R. §§ 64.1200(a)(3), (f)(9). The penalty for violating these provisions is $500 per call and up to $1,500 per call placed in willful violation of the TCPA. 47 U.S.C. § 227(b)(3)

8.      Decades after the TCPA passed into law, it is still unfortunately the case that "month after month, unwanted telemarketing calls and texts top the list of consumer complaints received by the Federal Communications Commission." Omnibus TCPA Order, 30 FCC Rcd. 7961, 7964 (F.C.C. July 10, 2015).

9.      In fact, in 2021 alone, there were over five million complaints from Americans to the FTC about unwanted telemarketing calls. Federal Trade Comm'n, *FTC Issues Biennial Report to Congress on the National Do Not Call Registry* (Jan. 5, 2022), https://www.ftc.gov/news-events/news/press-releases2022/01/ftc-issues-biennial-report-congress-national-do-not-call-registry.

10.     The private right of enforcement of the TCPA is critical to stopping the proliferation of these unwanted telemarketing calls. For example, while the Federal Communications Commission levied over $200 million in penalties against telemarketers between 2015 and 2018, it collected less than $7,000 of that amount. *See* Sarah Krouse, *The FCC Has Fined Robocallers $208 Million. It's Collected $6,790*, The Wall Street Journal, March 28, 2019, https://www.wsj.com/articles/the-fcc-has-fined-robocallers-208-million-its-collected-6-790-11553770803.

//

**JURISDICTION AND VENUE**

11.    This Court has subject-matter jurisdiction over the TCPA claims in this action under 28 U.S.C. § 1331, which grants this court original jurisdiction of all civil actions arising under the laws of the United States. *See Mims v. Arrow Fin. Servs., LLC*, 565 U.S. 368, 386-87 (2012) (confirming that 28 U.S.C. § 1331 grants the United States district courts federal-question subject-matter jurisdiction to hear private civil suits under the TCPA).

12.    Defendant Third Victory Media maintains a primary office in this District in the State of New York.

13.    Interest Media has common ownership with TVM, and worked closely with TVM, in overlapping roles.

14.    Interest Media acted as a joint enterprise with TVM.

15.    By working closely with TVM and/or acting as a joint enterprise with TVM, Interest Media knowingly and purposefully availed itself to the State of New York, and specifically the Southern District of New York.

16.    A substantial portion of the acts and omissions alleged in this complaint occurred in this District.

17.    Accordingly, personal jurisdiction exists, and venue is proper under 28 U.S.C. § 1391(b)(1) and 28 U.S.C. § 1391(b)(2).

**PARTIES**

18.    Plaintiff Richard Kontas is an individual who resides in Burbank, California, who is a "person" as that term is defined by 47 U.S.C. §153(39).

19.     Defendant TVM is a Wyoming corporation with a registered office address as 25 Robert Pitt Drive, Suite 204, Monsey, New York 10952, listed with the New York Secretary of State.

20.     Defendant Interest is a Delaware corporation whose principal place of business is 312 SW Greenwich Drive, Lees Summit, Missouri 64082.

21.     Defendants are each a "person" as that term is defined by 47 U.S.C. §153(39).

22.     Upon information and belief, Defendants TVM and Interest are substantially interrelated companies. Across their respective business filings, TVM and Interest share multiple mailing and office addresses, as well as multiple corporate officers, including Jeremy Matthew Hogatt, Kent Freeburg, and Mike Stephens.

23.     Defendants acted in concert and as a joint enterprise.

24.     Defendants acted through their employees, agents, vendors, contractors, officers, members, directors, heirs, successors, assigns, principals, subrogees and representatives.

## FACTUAL ALLEGATIONS

### I. Third Victory Media and Interest Media's Marketing Campaign to Kontas.

25.     At all times relevant hereto, Plaintiff owned a cell phone, the number for which was 818-XXX-2182.

26.     Plaintiff registered that cell phone number on the National Do Not Call Registry on February 10, 2008 in order to obtain solitude from invasive and irritating telemarketing calls and texts. Proof of Plaintiff's registration on the DNC Registry is attached as Exhibit A.

27.     At all times relevant hereto, Plaintiff used his cell phone primarily for personal and residential purposes, such as speaking with friends and family.

28.     Between October and November of 2022, Defendants or someone acting on their behalf placed at least seven (7) unsolicited and unconsented text messages to Plaintiff.

29.    None of the messages identified the sender, or on whose behalf the texts were sent.

30.    When Plaintiff clicked the link in the texts, each contained links that led to the URL www.pendingprize.com, which prompted Plaintiff to check his "lucky number" for a purported chance at winning a prepaid Visa card.

31.    A non-exhaustive list of text messages Plaintiff received from or on behalf of Defendants, follows below:

| Date | Time | Number |
|------|------|--------|
| 10/26/22 | 8:01 AM | 305-713-5323 |
| 10/26/22 | 1:45 PM | 818-612-4432 |
| 10/27/22 | 10:00 AM | 405-548-7825 |
| 11/11/22 | 9:37 AM | 650-609-1220 |
| 11/20/22 | 12:54 PM | 602-816-3283 |
| 11/21/22 | 9:26 AM | 772-899-5805 |
| 11/26/22 | 2:25 PM | 650-935-1788 |

32.    These texts were not made for "emergency purposes," but rather for solicitation purposes.

33.    Plaintiff did not have any pre-existing business relationship with Defendants, and was not interested in entering giveaways for prepaid Visa cards.

34.    Plaintiff did not provide Defendants with his prior express consent to be contacted for solicitation purposes.

35.    Defendants knew, or should have known, that their spam text messages were unwanted and harassing to Plaintiff.

36.    As a result of the foregoing, Plaintiff experienced frustration, annoyance, irritation and a sense that his privacy had been invaded by Defendants.

## II. Kontas Identifies Third Victory Media and Interest Media.

37.    In order to identify the party(ies) responsible for sending these texts, after having received all seven texts, Plaintiff followed each link.

38.    Each link led to a page on the site pendingprize.com, which displayed a "lucky number" that the recipient could purportedly use to win a prepaid Visa gift card. A true and correct image of the webpage to which Plaintiff's browser resolved after clicking the link is below:



39.    In each instance, clicking the "lucky number" led Plaintiff to a tracking page at imtrk.go2cloud.org. This page repeated the advertisement for a potential to win a prepaid Visa gift card. The tracking page automatically redirected to another URL, primerewardspot.com; which after clicking continue prompted Plaintiff to enter his name and contact information in order to proceed.

40.    After Plaintiff had received a number of those unwanted text messages, for investigative purposes, he entered information on that link. Which once done, Plaintiff was brought to a page that indicated "The gift card offers you're looking for are currently unavailable. Hang tight! Here are some BONUS offers that you've unlocked."

41.    Plaintiff's web browser resolved on primerewardspot.com.  The flow chart from the initial text message to the resolution at primerewardspot.com for the texts follows below (the specific phone number for the text reflects the first message listed above, but all the aforementioned texts follow below):



42.     "PrimeRewardSpot" is an assumed name registered with the New York Secretary of State to Third Victory Media, LLC, who upon information and belief own and operate primerewardspot.com.

43.     The URL go2cloud.org is a domain owned by TUNE, Inc., who also own hasoffers.com.

44.     While attempting to visit imtrk.go2cloud.org currently displays a blank page, imtrk.hasoffers.com displays a privacy policy disclosing that the site is owned or operated by Interest Media.

45.     Because of the close affiliations between the parties who own and/or operate the various websites Plaintiff was directed to by the links in the text messages, Plaintiff understands and therefore alleges Defendants and/or their agents are responsible for the text messages.

## DIRECT AND VICARIOUS LIABILITY

46.     Without the benefit of discovery, Plaintiff understands and therefore alleges Defendants directly placed the text messages at issue.

47.     However, if some or all of the calls were placed by third-party/parties on behalf of Defendants, in the alternative, Defendants are vicariously liable for those calls.

48.     On May 9, 2013, the FCC determined that telemarketers like Defendant cannot avoid liability by outsourcing telemarketing:

> [A]llowing the seller to avoid potential liability by outsourcing its telemarketing activities to unsupervised third parties would leave consumers in many cases without an effective remedy for telemarketing intrusions. This would particularly be so if the telemarketers were judgment proof, unidentifiable, or located outside of the United States, as is often the case. Even where third-party telemarketers are identifiable, solvent, and amenable to judgment limiting liability to the telemarketer that physically places the call would make enforcement in many cases substantially more expensive and less efficient, since consumers (or law enforcement agencies) would be required to sue each marketer separately in order to obtain relief. As the FTC noted, because "[s]ellers may have thousands of

"independent" marketers, suing one or a few of them is unlikely to make a substantive difference for consumer privacy.

*In re: Dish Network, LLC,* 28 F.C.C. Rcd. 6574 at 6588 (May 9, 2013) (internal citations omitted).

49.    Moreover, the May 2013 FCC ruling rejected a narrow view of TCPA liability, including the assertion that a seller's liability requires a finding of formal actual agency and immediate direction and control over third parties who place a telemarketing call. *Id*. at 6587 n. 107.

50.    The evidence of circumstances pointing to apparent authority on behalf of the telemarketer "should be sufficient to place upon the seller the burden of demonstrating that a reasonable consumer would not sensibly assume that the telemarketer was acting as the seller's authorized agent." *Id.* at 6593.

51.    If Defendants directly sent the calls at issue to Plaintiff, Defendants are directly liable for the placing of those calls.

52.    However, Defendants may have hired, encouraged, permitted, and enjoyed the benefits of mass telemarketing by third-party telemarketers.

53.    If Defendants did not directly send the calls to Plaintiff, Defendants' third-party telemarketers had actual and/or apparent authority to act on behalf of Defendants.

54.    Likewise, on information and belief, Defendants also ratified their agents' violations of the TCPA by accepting proceeds from sales imitated by unlawful telemarketing communications.

55.    Defendants controlled or had the right to control the marketing activities of those acting on their behalf.

56.    Defendants acted as a principal to telemarketing agent(s) who were acting on their behalf.

57.     Defendants are not permitted under the law to outsource and contract their way out of liability by directing and benefitting from their agents' TCPA violations.

58.     For the count identified below, if Defendants directly sent the texts at issue, they is directly liable. Alternatively, to the extent any calls were placed by a third-party agent(s) acting on Defendants' behalf, Defendants are vicariously liable for those unlawful communications.

## CLASS ALLEGATIONS

59.     Pursuant to Federal Rule of Civil Procedure 23(a), (b)(2) and (b)(3), Plaintiff bring this lawsuit as a class action on behalf of himself and all others similarly situated.

60.     Pursuant to Federal Rules of Civil Procedure 23(a), 23(b)(2) and 23(b)(3), Plaintiff seeks to represent the following classes:

**National Do-Not-Call Registry Class:** For the period from four years prior to the filing of this suit until the date a class is certified, all persons in the United States who: (1) received more than one telephone call or SMS message from or on behalf of Interest or TMV; 2) advertising sweepstakes or rewards; (3) during a 12-month period; (4) to a residential telephone number; and, (5) to a phone number that was registered on the Do Not Call Registry for 31 or more days at the time the calls were placed.

**Sender Identification Class:** All persons and entities throughout the United States (1) to whom Interest and/or TMV delivered, or caused to be delivered, more than one text message within a 12-month period, promoting Interest and/or TMV's or its business partners' goods or services, (2) where the subject text messages did not state the name of the individual caller, the name of Interest and/or TMV and a telephone number or address at which Interest and/or TMV may be contacted, (3) within four years preceding the date of this complaint through the date of class certification.

61.     Plaintiff reserves the right to add administrative subclasses, or to amend the definition of the proposed class, as circumstances dictate.

62.      The members of the proposed classes are so numerous that joinder of all members is impracticable. Plaintiff reasonably believe that hundreds or thousands of people have been harmed by Interest and TVM's actions. The names and phone numbers of the members of the

proposed class are readily identifiable through records available to Interest and/or TVM (or others acting on their behalf).

63.     Members of the proposed classes have suffered damages in an amount where that it would make filing separate lawsuits by individual members economically infeasible.

64.     On information and belief, Interest and TVM have sent text messages to and continues to text people who are registered on the National Do-Not-Call Registry. It is reasonable to expect that Defendants will continue to send such spam text messages, absent this lawsuit.

65.     Common questions of law and fact exist as to all members of the proposed classes and predominate over any questions affecting only individual members. The questions of law and fact common to the proposed class include, but are not limited to:

    a.  Whether the text messages adequately disclosed the identity of the sending party and on whose behalf they were sent;

    b.  Whether Defendants sent text messages to Plaintiff and the putative class members after they were registered on the National Do Not Call Registry more than 31 days;

    c.  Whether Defendants' conduct violates 47 U.S.C. § 227(c);

    d.  Whether Defendants' conduct violates the rules and regulations implementing the TCPA;

    e.  Whether any contract with third-party telemarketers creates an agency relationship;

    f.  Whether Defendants ratified violations by vendors;

    g.  Whether Plaintiff and the putative class members are entitled to increased damages for each violation based on the willfulness of Defendants' conduct.

66.     Plaintiff's claims are typical of the claims of the proposed class members because his claims arise from the same practice that gives rise to the claims of the members of the proposed class and is based on the same legal theories.

67.     Plaintiff and his counsel will fairly and adequately protect the interests of the members of the proposed classes. Plaintiff's interests do not conflict with the interests of the

proposed classes he seeks to represent. Plaintiff has retained lawyers who are competent at litigating the TCPA and class-actions.

68.    Plaintiff's counsel will vigorously litigate this case as a class action, and Plaintiff and his counsel are aware of their responsibilities to the putative members of the class and will discharge those duties.

69.    A class action is superior to all alternative methods of adjudicating this controversy, including through individual lawsuits. Joinder of all proposed members of the proposed classes in one action is impracticable if not impossible and prosecuting hundreds or thousands of individual actions is not feasible. The size of the individual claims is likely not large enough to justify filing a separate action for each claim. For members of the proposed class, a class action is the only procedural mechanism that will allow recovery. Even if members of the proposed classes had the resources to pursue individual litigation, that method would be unduly burdensome to the courts. Individual litigation could also result in inconsistent adjudications.

70.    In contrast, a class action is superior in that it will benefit the court and litigating parties through efficiency, economy of scale and unitary adjudication resulting from supervision of the litigation by a single court.

71.    Questions of law and fact, particularly the propriety of texting phone numbers registered on the National Do-Not-Call Registry and the adequacy of the disclosure of the identity of the sending and on whose behalf the texts were sent, predominate over questions affecting only individual members.

72.    Defendants acted or refused to act on grounds that apply generally to the class, making final injunctive relief or corresponding declaratory relief is appropriate with respect to the class as a whole.

## COUNT I
### Violation of 47 U.S.C. § 227(c)(5) and 47 C.F.R. § 64.1200(c)
### Violation of the Rules Relating to the National Do-Not-Call Registry

73.     Plaintiff incorporates by reference the foregoing allegations as if fully set forth herein.

74.     The TCPA provides that it is a violation of the law for a person whose phone number is registered on the National Do Not Call Registry to receive more than one solicitation call on their phone "within any 12-month period by or on behalf of the same entity." *See* 47 U.S.C. §§ 227(c)(1), (c)(5); 47 C.F.R. § 64.1200(c)(ii), (e).

75.     A text message is a "call" as defined by the TCPA. *See, e.g.*, *Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 954 (9th Cir. 2009).

76.     The penalty for each call made in violation of the TCPA's restrictions on placing telemarketing calls to numbers registered on the National Do Not Call Registry is $500 per violation and up to $1,500 per violation if the violation is determined to be willful. See 47 U.S.C. § 227(c)(5). In addition, the TCPA allows the Court to enjoin Defendant's violations of the TCPA's regulations prohibiting calls to phone numbers registered on the National Do Not Call Registry. See 47 U.S.C. § 227(c)(5)(A).

77.     By calling Plaintiff after his number was registered on the National Do Not Call Registry, Defendants violated the TCPA, including but not limited to, 47 U.S.C. §§ 227(c)(1) and the TCPA's corresponding regulations.

78.     Defendants' violations are knowing and willful because Defendants knew or should have known that Plaintiff had his number registered on the Do Not Call Registry and had previously told Defendants the calls were unwanted.

79.    The acts and/or omissions of Defendants were done unfairly, unlawfully, intentionally, recklessly, willfully and absent any legal justification or excuse.

80.    Plaintiff is entitled to damages of $500.00 per violation for each call placed and text sent by Defendant and up to $1,500.00 per violation if the Court finds Defendants willfully violated the TCPA.

81.    Plaintiff seeks injunctive and equitable relief under 47 U.S.C. § 227(c)(5) against Defendants to stop their violations of the TCPA.

**COUNT II**
**Violation of 47 U.S.C. § 227(c)(5) and 47 C.F.R. § 64.1200(d)**
**Sender Identification Rules**

82.     Plaintiff repeats and re-alleges each and every factual allegation contained above, as though fully set forth herein.

83.    A text message is a "call" as defined by the TCPA. *See, e.g.*, *Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 954 (9th Cir. 2009).

84.    The TCPA's implementing regulation, 47 C.F.R. § 64.1200(d), provides in relevant part that "[a] person or entity making a call for telemarketing purposes must provide the called party with the name of the individual caller, the name of the person or entity on whose behalf the call is being made, and a telephone number or address at which the person or entity may be contacted." *Id.* at § 64.1200(d)(4).

85.    Section 64.1200(e) provides that §§ 64.1200(c) and (d) "are applicable to any person or entity making telephone solicitations or telemarketing calls to wireless telephone numbers."

86.    Any "person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this

subsection may" may bring a private action based on a violation of those regulations, which were promulgated to protect telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object. 47 U.S.C. § 227(c).

87.    Defendant violated 47 C.F.R. § 64.1200(d)(4) by initiating, or causing to be initiated, telephone solicitations to telephone subscribers such as Plaintiffs and the class members while failing to "provide the called party with the name of the individual caller, the name of the person or entity on whose behalf the call is being made, and a telephone number or address at which the person or entity may be contacted."

88.    Defendant therefore violated 47 U.S.C. § 227(c)(5) because they delivered, or caused to be delivered, to Plaintiffs and members of the Sender Identification Class, more than one solicitation call or text message in a 12-month period in violation of 47 C.F.R. § 64.1200(d)(4).

89.    As a direct and proximate cause of Defendant's violations of 47 U.S.C. § 227(c)(5) and 47 C.F.R. § 64.1200(d)(4), Plaintiffs suffered a private nuisance, experienced frustration and wasted time attempting to investigate the identity of the entity sending text messages to them, and incurred costs—through their counsel—in filing lawsuits against a different entity in order to identify Defendant, despite Defendant being legally obligated to identify itself in its communications to avoid causing those precise harms.

90.    As a result of Defendant's violations of 47 U.S.C. § 227(c)(5) and 47 C.F.R. § 64.1200(d)(4), Plaintiffs, and the members of the Sender Identification Class, are entitled to damages in an amount to be proven at trial.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests the Court grant the following relief in his favor and against Defendants:

a. Certify a class pursuant to Fed. R. Civ. P. 23(a) and 23(b)(3);

b. Appoint Plaintiff as class representative and appoint his attorneys as class counsel;

c. Enter judgment in favor of Plaintiff and the putative class against Defendants for violation 47 U.S.C. § 227(c);

d. Award Plaintiff and the putative class statutory damages of $500 per violation, pursuant to 47 U.S.C. § 227(c)(5)(B);

e. Award Plaintiff and the putative class treble damages of $1500 per violation, pursuant to 47 U.S.C. § 227(c)(5)(C);

f. Enter injunctive relief that enjoins Defendants and/or their agents from violating Plaintiff's rights under the TCPA; and

g. Award Plaintiff and the putative classes any other relief afforded by law and such further and other relief the Court deems just and appropriate.

## JURY TRIAL DEMAND

Plaintiff hereby demands a trial by jury of all issues so triable.


Dated: December 10, 2025

Respectfully submitted,

By: */s/ Craig T. Kimmel*
CRAIG THOR KIMMEL, ESQ.
Jacob U. Ginsburg, Esq. (*pro hac* anticipated)
KIMMEL & SILVERMAN, P.C.
30 East Butler Ave.
Ambler, PA 19002
Telephone: (267) 468-5374
teamkimmel@creditlaw.com
jginsburg@creditlaw.com
*Attorneys for Plaintiff*