# KIMMEL & SILVERMAN

### P.C.

ROBERT M. SILVERMAN [+-*]
CRAIG THOR KIMMEL [+-^]

[+] *Member, PA Bar*
[*] *Member, NJ Bar*
[-] *Member, NY Bar*
[^] *Member, MA Bar*
[#] *Member, MD Bar*
[♠] *Member, OH Bar*
[¶] *Member, NH Bar*
[Ω] *Member, CT Bar*
[«] *Member, TN Bar*
[µ] *Member, WY Bar*
[¥] *Member, DC Bar*
[₤] *Member, CA Bar*
[°] *Member, WI Bar*
[©] *Member, FL Bar*
[à] *Member, AZ Bar*
[»] *Member, TX Bar*
[§] *Member, MI Bar*
[£] *Member, WV Bar*

JACQUELINE C. HERRITT [+*#¥-°^♠]
ROBERT A. RAPKIN [+]
ANGELA K. TROCCOLI [^¶Ω]
JASON L. GRESHES [+*-©^]
CHAD P. DOMAN [+£♠]
JACOB U. GINSBURG [+*§]
KEVIN A. NOLAND [»]
LENNY BUSH, *Of Counsel* [₤]
AMY L.B. GINSBURG, *Of Counsel* [»*#+µ«₤©à]

www.creditlaw.com

**CORPORATE HEADQUARTERS**
30 E. Butler Avenue
Ambler, PA 19002
P (215) 540-8888 | F (877) 600-2112

**WESTERN PA OFFICE**, 100 Ross Street, Suite 330, Pittsburgh, PA 15219 | P (412) 566-1001, F (215) 540-8817
**NEW JERSEY OFFICE**, Executive Quarters, 1930 E. Marlton Pike, Suite Q29, Cherry Hill, NJ 08003 | P (856) 429-8334, F (215) 540-8817
**NEW YORK OFFICE**, Two Park Avenue, 20th floor, New York, NY 10016 | P (212) 719-7543, F (877) 617-2515
**BUFFALO, NY OFFICE**, 1967 Wehrle Drive, PMB 219, Suite #3, Buffalo, NY 14221 | P (800) 536-6652, F (877) 600-2112
**OHIO OFFICE**, 4031 Colonel Glenn Highway, Suite 450, Beavercreek, OH 45431 | P (937) 306-7220, F (215) 540-8817
**TEXAS OFFICE**, 701 Commerce Street, 5th Floor, Dallas, TX 75202 | P (800) 536-6652, F (877) 600-2112
**SAN FRANCISCO, CA OFFICE**, 1160 Battery Street East, Suite 100, #1099 San Francisco, CA 94111 | P (415) 947-7827, F (877) 600-2112
**SAN DIEGO, CA OFFICE**, 600 West Broadway Suite 700, PMB #344, San Diego, CA 92101 | P (619) 785-3003, F (877) 600-2112
**LOS ANGELES, CA OFFICE**, 611 Wilshire Boulevard, Suite 900 #241, Los Angeles, CA 90017| P (213) 340-7770, F (877) 600-2112

**PLEASE REMIT ALL CORRESPONDENCE TO THE AMBLER OFFICE**

March 27, 2026

**VIA ECF**
Hon. Philip M. Halpern
United States District Court
Southern District of New York
300 Quarropas Street, Room 530
White Plains, New York 10601

> **Re:** ***Richard Kontas v. Third Victory Media, LLC and Interest Media, Inc.***
> **SDNY Case No. 7:25-cv-10227-PMH**

Dear Judge Halpern:

I write on behalf of Plaintiff Richard Kontas ("Plaintiff" or "Kontas") in response to the pre-motion letter filed by Defendants Third Victory Media, LLC ("TVM") and Interest Media, Inc. ("Interest" and with TVM "Defendants"). (ECF No. 16.) As articulated below, the Court should deny Defendants' motion and Order Defendants to file an answer within 14 days of the Order.

### A. Kontas' claims are outside the scope of any alleged arbitration agreement.

Plaintiff filed a putative class-action under the Telephone Consumer Protection Act, 47 U.S.C. § 227, et seq. ("TCPA") alleging a joint enterprise theory of liability. (*See generally,* ECF No. 1.) In their pre-motion letter and accompanying memorandum, Defendants argue Kontas' claim is subject to an arbitration agreement and class waiver. (*See* ECF Nos. 16, pp. 4-5; ECF No. 16-1, pp. 22-24.) However, the provision Defendants cite reads in relevant part: "any communications, calls, texts, or other contacts made to you **after you opt in**, shall be resolved

1

exclusively through final and binding arbitration." (ECF No. 16-1, p. 23 (emphasis added).) The complaint, however, plainly explains that "to identify the party(ies) responsible for sending these texts, **after having received all seven texts, Plaintiff followed each link**." (ECF no. 1, ¶ 37 (emphasis added.) Kontas is not suing for texts he received after he submitted his information, but before. Kontas' claims fall outside any alleged arbitration agreement.

### B. Kontas alleges a concrete injury traceable to Defendants, satisfying Article III.

Defendants also argue the complaint does not sufficiently allege the harm from the unwanted texts to be traceable to Defendants. (ECF No. 16, p. 2.) However, courts routinely hold allegations of receiving text messages which lead the consumer to a website, is sufficient at the pleading stage, to create an inference that the entity responsible for that website is also the entity responsible for those telemarketing messages. *See, e.g. Bank v. Digit. Media Sols., Inc.*, No. 22-CV-293(EK)(LB), 2023 U.S. Dist. LEXIS 18696, at *2-3 (E.D.N.Y. Feb. 3, 2023) (denying motion to dismiss where text messages featured links directing to websites owned by the defendant); *See also, Miholich v. Senior Life Ins. Co.*, No. 21-cv-1123-WQH-AGS, 2022 U.S. Dist. LEXIS 23981, at *12 (S.D. Cal. Feb. 10, 2022) (denying motion to dismiss on 12(b)(1) traceability grounds, where "the content of the text messages in this case—allegedly advertising financed leads and linking to Defendant's webinar making similar offers—supports an inference that Defendant sent the text messages to Plaintiff"); *See, also Abboud v. Circle K Stores Inc*., No. CV-23-01683-PHX-DWL, __ F.Supp.3d __ 2024 U.S. Dist. LEXIS 74416, at *14-15 (D. Ariz. Apr. 24, 2024) ("messages included a link to Defendant's website … make it plausible that the purpose of the text messages was to encourage Plaintiff to sign up to receive offers for future shopping at Circle K"). In the complaint, Kontas pleads a concrete injury when he alleges the spam texts caused him "frustration, annoyance, irritation and a sense that his privacy had been invaded by Defendants." (ECF No. 1, ¶ 36.) Kontas then describes in detail the text messages he received, and how they

linked to websites operated by Defendants. (*Id.*, ¶¶ 37-44.) The complaint plausibly alleges the text messages are traceable to Defendants.

Defendants next make the regrettable and oft-rejected argument that Plaintiff lacks Article III standing because he is a "repeat TCPA filer" who "undertook a calculated investigative effort to identify potential defendants", citing *Stoops v Wells Fargo Bank, N.A.*, 197 F Supp 3d 782 (WD Pa 2016)- a case resolved on summary judgment after the record showed the plaintiff owned 35 phones and was manufacturing claims.  (ECF No. No. 16, pp. 2-3.) There is nothing remotely similar to the scheme carried out by Ms. Stoops, here. Mr. Kontas is an investigative journalist, who has done nothing improper, and is being attacked simply for exercising his rights under the TCPA through the statutory mechanism established by President George H.W. Bush and a bipartisan congress. *See Noviello v. Holloway Funding Grp.*, 2023 U.S. Dist. LEXIS 30591, at *8 (N.D. Tex. Feb. 23, 2023) ("using the TCPA to sue on the kind of conduct that the statute targets, and doing so to pursue statutory damages, is not a misuse of the statute.")

Virtually all Americans receive unwanted telemarketing calls. *Barr v. Am. Ass'n of Political Consultants*, 140 S. Ct. 2335, 2343 (2020) ("Americans passionately disagree about many things. But they are largely united in their disdain for robocalls.") Out of hundreds of millions of unwanted telemarketing communications, five million Americans complain each year to the FCC or FTC each year,[1] and only a few thousand file suit under the TCPA. Knowledge of the TCPA is a prerequisite to filing suit. Experience with the TCPA does not diminish Article III standing. Nonetheless, there have been numerous misguided attacks on Article III standing at the pleading stage, similar to those presented by Defendants here. Fortunately, those attacks have been rejected

---

[1]  Federal Trade Comm'n, FTC Issues Biennial Report to Congress on the National Do Not Call Registry (Jan. 5, 2022) available at: https://www.ftc.gov/news-events/news/press-releases2022/01/ftc-issues-biennial-report-congress-national-do-not-call-registry.

*ad nauseum* by courts in the Second Circuit, and throughout the country. *See e.g. Melito v. Experian Mktg. Sols., Inc.*, 923 F.3d 85, 93 (2d Cir. 2019) (finding that plaintiffs need not allege any additional harm beyond the receipt of unsolicited text message advertisements to establish a concrete injury cognizable under the TCPA); *see also Zani v. Rite Aid Headquarters Corp.*, 246 F. Supp. 3d 835, 847 (S.D.N.Y. 2017) (Nathan, J.) (allegations of a single unwanted call in violation of the TCPA is sufficient to create Article III standing); *Susinno v. Work Out World Inc.*, 862 F.3d 346, 351 (3d Cir. 2017) ("in asserting 'nuisance and invasion of privacy' resulting from a single prerecorded telephone call, [the] complaint asserts the very harm that Congress sought to prevent, arising from prototypical conduct proscribed by the TCPA"); *Hall v. Smosh Dot Com, Inc.*, 72 F.4th 983, 991 (9th Cir. 2023) (receipt of two or more text messages to number on the Do-Not-Call registry sufficient injury to create article III standing). By alleging annoyance from unwanted spam text messages after registration of his number on the National Do-Not-Call Registry, Kontas has alleged the specific harm the TCPA was enacted to prevent. The fact Kontas has filed several other cases and knows how to identify the senders of spam text messages, does not negate his claim or dissolve his statutory rights.

## C.  The Court has personal jurisdiction over Interest Media

Defendants next argue New York lacks jurisdiction over Interest Media and disputes that Interest Media and TVM are a joint enterprise. (ECF No. 16, p. 4.) Most obviously, the fact the two companies hired one law firm to present this argument- which theoretically puts Interest and TVM at odds- suggests the two companies, are very much a joint enterprise.[2]  Furthermore, while Defendants downplay the connection between TVM and Interest, the complaint alleges with specificity that from "their respective business filings, TVM and Interest share multiple mailing

---

[2] If TVM and Interest were simply arms-length business partners, TVM would likely not sign off on an argument, which, if accepted, would leave it carrying 100% of the freight and its business partner responsible for nothing.

and office addresses, as well as multiple corporate officers, including Jeremy Matthew Hogatt, Kent Freeburg, and Mike Stephens." (ECF No. 1, ¶ 22.) The complaint further explains that Kontas clicked the link from the text messages, the URL rapidly displayed several webpages owned by Interest, before resolving on a TVM-owned page. (*Id.,* ¶ 41-45.) While Plaintiff does not identify all of the minute details of Defendants' business relationship, "where the facts are peculiarly within the possession and control of the defendant, or where the belief is based on factual information that makes the inference of culpability plausible." *Carrodine v. Flatiron Media, LLC*, No. 22-CV-9660 (JMF), 2023 U.S. Dist. LEXIS 210182, at *3 n.1 (S.D.N.Y. Nov. 27, 2023) (Furman, J.) (citing *Arista Records LLC v. Doe 3*, 604 F.3d 110, 120 (2d Cir. 2010).) New York's long-arm statute permits personal jurisdiction over a non-domiciliary who transacts business within the state or contracts to supply goods or services in the state. (N.Y. C.P.L.R. § 302(a)(1)). By entering into a joint enterprise with TVM, Interest knowingly availed itself to the jurisdiction of New York.

### D. The propriety of class treatment should be resolved on class certification, not a motion to strike.

In the alternative, Defendants also seek to strike class allegations under Fed. R. Civ. P. 12(f). (ECF No. 16, p. 4.) Motions to strike class claims are strongly disfavored because class certification under Rule 23 typically requires "a more complete factual record." *Winfield v. Citibank, N.A.*, 842 F. Supp. 2d 560, 573 (S.D.N.Y. 2012). In *Wilson v. Better Mortg. Corp.*, 2025 U.S. Dist. LEXIS 251694 (S.D.N.Y. Dec. 5, 2025), Judge Englemayer highlighted the imprudence of striking class allegations at the pleading stage:

> there is not yet a factual record that would enable the Court to assess whether Rule 23's requirements are met. As Better Mortgage acknowledges, that may very well depend on facts to be developed relating to putative class members… Better Mortgage's motion is properly made later, following class discovery.

*Wilson*, 2025 U.S. Dist. LEXIS 251694, at *30.

Once discovery has been exchanged, a record developed and class certification briefed, the

Court will be in a position to adjudicate the propriety of class treatment under Rule 23. Defendants'

efforts to preempt that process should fail. There is no reason to strike class allegations.

For the reasons set forth above reasons, the Court should deny the prospective motion to

dismiss and/or strike, and Order Defendants to file an answer within 14 days of the Order.


Respectfully Submitted,

JACOB U. GINSBURG

cc: all parties of record (via ECF)