IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| RICHARD KONTAS, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>THIRD VICTORY MEDIA, LLC and INTEREST MEDIA, INC.,<br><br>Defendants. | Civil Action No.: 7:25-cv-10227-PMH<br><br><br><br>**(Oral Argument Requested)** |

## DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION TO COMPEL ARBITRATION OR, IN THE ALTERNATIVE, TO DISMISS PLAINTIFF'S CLASS ACTION COMPLAINT

**WILSON, ELSER, MOSKOWITZ, EDELMAN & DICKER LLP**
Richard W. Boone Jr.
Kieran R. Lang
150 East 42nd Street
New York, NY 10017
Telephone: (212) 490-3000
Fax: (212) 490-3038
E-mail: richard.boone@wilsonelser.com;
kieran.lang@wilsonelser.com

*Attorneys for Defendants*
*Third Victory Media, LLC and*
*Interest Media, Inc.*

332004978v.5

## TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ................................................................................................ 1

FACTUAL ALLEGATIONS ................................................................................................... 4

ARGUMENT ........................................................................................................................... 7

    I.      The Court Should Stay Proceedings and Compel Arbitration ............................... 7

    II.     Plaintiff's Claims Must be Dismissed Pursuant to Rule 12(b)(1) Because Plaintiff Lacks Standing to Assert Claims Against Defendants .......................... 10

    III.    Plaintiff's Claims Against Interest Media Must Be Dismissed Pursuant to Rule 12(b)(2) Because the Court Lacks Personal Jurisdiction Over That Defendant ........................................................................................................... 13

    IV.    Plaintiff's Claims Fail as a Matter of Law Under Rule 12(b)(6) .......................... 16

CONCLUSION ....................................................................................................................... 21

332004978v.5

**TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Abdelhamid v Altria Group, Inc.*,
515 F Supp 2d 384 (S.D.N.Y. 2007)..................................................................................20

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)..............................................................................................12, 16

*Bank Brussels Lambert v Fiddler Gonzalez & Rodriguez*,
171 F3d 779 (2d Cir 1999)...............................................................................................14

*Bank of Am. v Apollo Enter. Solutions, LLC*,
2010 U.S. Dist. LEXIS 116396 (S.D.N.Y. Nov. 1, 2010)...............................................15, 21

*Bank v. Alarm.com Holdings, Inc.*,
828 F. App'x 5 (2d Cir. 2020) .....................................................................................3, 11, 19

*Bank v. Spark Energy, LLC*,
860 F. App'x 205 (2d Cir. 2021) ....................................................................................3, 19

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007)..........................................................................................................16

*C.f. De Jesus v Sears, Roebuck & Co.*,
87 F3d 65 (2d Cir. 1996)...............................................................................................15, 20

*Cacho v McCarthy & Kelly LLP*,
739 F Supp 3d 195 (S.D.N.Y. 2024)...........................................................................11, 17, 19

*Calder v Jones*,
465 US 783 (1984).............................................................................................................16

*Citigroup Inc. v. City Holding Co.*,
97 F. Supp. 2d 549 (S.D.N.Y. 2000).................................................................................16

*Cunningham v Sunshine Consulting Group, LLC*, No. 3:16-2921,
2018 U.S. Dist. LEXIS 121709 (M.D. Tenn. July 20, 2018) ............................................18

*Fulani v Brady*,
809 F Supp 1112 (S.D.N.Y. 1993) ...................................................................................11

*Gaker v Q3M Ins. Solutions*,No. 3:22-CV-00296-RJC-DSC,
2023 U.S. Dist. LEXIS 44919 (W.D.N.C. Feb. 7, 2023)....................................................17

332004978v.5

*Gerrard v Acara Solutions, Inc.*,
  469 F. Supp. 3d 96 (W.D.N.Y. 2020) ..................................................................18

*Heldman v. Sobol*,
  962 F.2d 148 (2d Cir. 1992)................................................................................10

*Helicopteros Nacionales De Colombia v Hall*,
  466 US 408 (1984)...............................................................................................14

*Int'l Shoe Co. v. Washington*,
  326 U.S. 310 (1945).............................................................................................14

*ITEL Containers Intl. Corp. v Atlanttrafik Express Serv., Ltd.*,
  909 F2d 698 (2d Cir 1990)...................................................................................20

*Jazini by Jazini v Nissan Motor Co.*,
  148 F.3d 181 (2d Cir 1998)...................................................................................3

*Karabu Corp. v Gitner*,
  16 F. Supp. 2d 319 (SDNY 1998) .........................................................................3

*Keeton v. Hustler Magazine, Inc.*,
  465 U.S. 770 (1984).............................................................................................16

*Kontas v. LiveFree Emergency Response, Inc.*,
  Case No. 2:22-cv-07019 (C.D. Cal.) (filed 9/28/2022) .........................................4

*Kontas v. Research Strategies, Inc.*,
  Case No. 2:23-cv-05961 (C.D. Cal) (filed 7/24/2023) ..........................................4

*Kontas v. Vercy L.L.C., et al.*,
  Case No. 8:23-cv-00895 (C.D. Cal) (filed 5/20/2023) ..........................................4

*Leyse v Bank of Am. N.A.*,
  804 F3d 316 (3d Cir. 2015)..................................................................................13

*Lujan v Defenders of Wildlife*,
  504 US 555 (1992)....................................................................................10, 11, 12

*McAnaney v Astoria Fin. Corp.*,
  665 F Supp 2d 132 (E.D.N.Y. 2009) ....................................................................21

*Melito v. Experian Mktg. Solutions, Inc.*,
  923 F.3d 85 (2019)...............................................................................................10

*Meyer v. Uber Technologies, Inc.*,
  868 F.3d 66 (2d Cir. 2017).....................................................................................9

332004978v.5

*Parsons v Kal Kan Food, Inc.*,
  68 AD3d 1501 (3d Dept 2009) ...................................................................................15, 21

*Rothstein v UBS AG*,
  708 F3d 82 (2d Cir 2013)......................................................................................................10

*Rush v. Savchuk*,
  444 U.S. 320 (1980)...............................................................................................................16

*Rushaid v Pictet & Cie*,
  28 N.Y.3d 316 (2016) ...........................................................................................................14

*Shelton v. Fast Advance Funding, LLC*,
  378 F. Supp. 3d 356 (E.D. Pa. 2019) ...................................................................................17

*Simon v. Eastern Ky. Welfare Rights Organization*,
  426 U.S. 26 (1976)................................................................................................10, 11, 12

*Smith v Vision Solar LLC*, No. 20-2185,
  2020 U.S. Dist. LEXIS 172224 (E.D. Pa. Sep. 21, 2020) .......................................................12

*Spokeo, Inc. v Robins*,
  578 US 330 (2016).................................................................................................................10

*Stoops v Wells Fargo Bank, N.A.*,
  197 F Supp 3d 782 (WD Pa 2016)........................................................................................13

*USAnovic v Americana, L.L.C.*,
  775 F Supp 3d 1133 (D Nev 2025).......................................................................................12

*Walden v Fiore*,
  571 US 277 (2014).................................................................................................................14

*Warth v Seldin*,
  422 US 490 (1975).................................................................................................................10

*Whitt v. Prosper Funding LLC*, No. 1:15-cv-136-GHW,
  2015 U.S. Dist. LEXIS 91413 (S.D.N.Y. July 14, 2015) .........................................................9

*Williams v McAllister Bros., Inc.*,
  534 F2d 19 (2d Cir 1976)...............................................................................................15, 20

*Wireless Enters., Inc. v. Al Consulting, LLC*, No. 05 Civ. 6176,
  2006 U.S. Dist. LEXIS 79874, 2006 WL 3370696 (W.D.N.Y. Oct. 30, 2006) ......................20

*Zelma v Burke*, Civil Action No. 2:16-02559-CCC-MF,
  2017 U.S. Dist. LEXIS 1209 (D.N.J. Jan. 4, 2017) ..............................................................12

332004978v.5

**Statutes**

9 U.S.C. § 2.........................................................................................................1, 2, 7

9 U.S.C. § 3..............................................................................................................9

47 U.S.C. § 227.................................................................1, 3, 4, 9, 12, 13, 17, 18, 19

47 U.S.C. § 227(a)(4)...........................................................................................4, 18

47 U.S.C. § 227(c) ..................................................................................................17

47 U.S.C. § 227(c)(5)..............................................................................1, 17, 18, 19

47 C.F.R. § 64.1200(c).........................................................................1, 17, 19

47 C.F.R. § 64.1200(d) .........................................................................................1, 17

**Other Authorities**

U.S. Const., Art. III.................................................................................2, 10, 11, 12, 13

U.S. Const., Am. 14 .................................................................................................14

**Rules**

47 C.F.R. § 64.1200(c)(2)......................................................................................17

47 C.F.R. § 64.1200(d)(4).......................................................................................17

47 C.F.R. § 64.1200(f)(13) .....................................................................................18

47 C.F.R. § 64.1200(f)(15) .....................................................................................18

Fed. R. Civ. P. 12(b)(1)..................................................................................1, 2, 7, 10

Fed. R. Civ. P. 12(b)(2)..................................................................................1, 3, 7, 13

Fed. R. Civ. P. 12(b)(6).............................................................................1, 3, 7, 16, 21

N.Y. C.P.L.R. 302(a)(1)...........................................................................................14

N.Y. C.P.L.R. 302 (a) (1).........................................................................................14

332004978v.5

Defendants Third Victory Media, LLC ("TVM") and Interest Media, Inc. ("Interest Media") (collectively, "Defendants") respectfully submit this Memorandum of Law in Support of their Motion to Stay these Proceedings and Compel Arbitration under the Federal Arbitration Act, 9 U.S.C. § 2, or, in the alternative, to Dismiss Plaintiff Richard Kontas' ("Plaintiff") Class Action Complaint (the "Complaint") (Dkt. No. 1), with prejudice, pursuant to Rules 12(b)(1), 12(b)(2), and/or 12(b)(6) of the Federal Rules of Civil Procedure.

## PRELIMINARY STATEMENT

This putative class action rests on an attenuated and fundamentally flawed theory of liability and should be dismissed in its entirety and with prejudice.  Plaintiff alleges that between October and November 2022, he received seven unsolicited text messages on his cell phone from various unidentified phone numbers.  None of the messages identified the sender or the entity on whose behalf they were sent.  Plaintiff concedes that he clicked on the links in these messages, navigated through multiple third-party websites, followed tracking redirects and made assumptions, ultimately found TVM's website, and "for investigative purposes" entered his personal information on that website.  From this tortuous chain of clicks and redirects, Plaintiff asks this Court to infer that Defendants were responsible for sending the text messages.  Such allegations are insufficient as a matter of law.

The Complaint asserts two counts under the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227: Count I alleges violations of the National Do Not Call Registry provisions under 47 U.S.C. § 227(c)(5) and 47 C.F.R. § 64.1200(c), and Count II alleges violations of the sender identification rules under 47 U.S.C. § 227(c)(5) and 47 C.F.R. § 64.1200(d).  Both counts fail for multiple reasons, each of which independently warrants dismissal with prejudice.  As an initial matter, however, all of those claims are subject to arbitration under the Terms of Use ("Terms") set forth on TVM's website, to which Plaintiff unequivocally agreed.

1

In this regard, the Complaint's own allegations establish the factual predicate for arbitration: Plaintiff admits that he visited primerewardspot.com, clicked "continue," and entered his personal information, thereby agreeing to the website's Terms. Those Terms contain a comprehensive arbitration agreement which applies to "any and all disputes, claims, or controversies of any kind arising out of or relating to (a) your use of or access to the Website, (b) any products or services offered, marketed, sold, or provided in connection with the Website, or (c) any communications, calls, texts, or other contacts made to you after you opt in." The arbitration agreement also includes a class action waiver which expressly references the TCPA, a delegation clause committing all questions of arbitrability to the arbitrator, and a provision expressly extending the arbitration obligation to "Covered Parties," which includes affiliates and marketing partners, enabling both TVM and Interest Media to enforce the agreement.

In accordance with the foregoing, the Court should compel arbitration and stay proceedings under the Federal Arbitration Act. In the alternative, should the Court determine that it is appropriate to proceed with any aspect of Plaintiff's claims, it should dismiss those claims for lack of standing, lack of personal jurisdiction over Interest Media, and failure to state a claim under any of the theories pled.

The Court lacks subject matter jurisdiction under Rule 12(b)(1) because Plaintiff cannot satisfy the traceability or redressability requirements of Article III standing. The Complaint identifies seven text messages sent from seven different phone numbers spanning multiple states, but does not link a single one of those numbers to either Defendant. Instead, the Complaint's sole theory of causation is a multi-step inference chain—from the text messages, to pendingprize.com, which is not owned by Defendants, through a tracking redirect at imtrk.go2cloud.org, which is not owned by Defendants, and then somehow finally to a website owned by TVM—that does not

2

332004978v.5

establish either Defendant caused the messages to be sent.  The Second Circuit has squarely rejected TCPA claims based on this kind of attenuated, conclusory pleading.[1]  Plaintiff's lack of standing is compounded by the fact that he is a serial TCPA litigant who deliberately and rather deeply engaged with the text messages "for investigative purposes,[2]" rendering his alleged injuries self-inflicted rather than fairly traceable to any conduct by Defendants.

The Court also lacks personal jurisdiction over Interest Media under Rule 12(b)(2).  Interest Media is a Delaware corporation headquartered in Missouri with no office, no employees, no physical presence, no contracts, and no direct business transactions in New York.  The Complaint's sole jurisdictional theory is to impute co-Defendant TVM's New York contacts to Interest Media through conclusory allegations of a "joint enterprise,[3]" and an allegation "[u]pon information and belief" based on "their respective business filings" that "TVM and Interest share multiple mailing and office addresses, as well as multiple corporate officers."  This is precisely the type of derivative jurisdictional theory that courts in this Circuit routinely reject.[4]

Lastly, even if the Court were to find standing and personal jurisdiction, the Complaint fails to state a claim and must be dismissed under Rule 12(b)(6).  The text messages promoted a sweepstakes, not the purchase or rental of goods or services, and therefore are not actionable

---

[1] *See*, *e.g.*, *Bank v. Spark Energy, LLC*, 860 F. App'x 205, 206 (2d Cir. 2021) ("We agree with the District Court's conclusion that under these circumstances the complaint's allegation that Spark placed the calls is conclusory."); *Bank v. Alarm.com Holdings, Inc.*, 828 F. App'x 5, 8 (2d Cir. 2020) ("Bank failed to allege that either Alliance or Alarm.com initiated the phone calls of which he complains, which is fatal to each of his claims.").

[2] (*See* Compl. ¶ 40).

[3] (Compl., ¶¶ 14, 15, 23).

[4] *See*, *e.g.*, *Jazini by Jazini v Nissan Motor Co.*, 148 F.3d 181, 184 (2d Cir 1998) (holding that the court lacked personal jurisdiction where the complaint includes only a "conclusory statement" regarding the parent company's control over the subsidiary and "states no facts supporting that conclusion."); *Karabu Corp. v Gitner*, 16 F. Supp. 2d 319, 324 (SDNY 1998) (personal jurisdiction "cannot be shown based merely upon a defendant's title or position within the corporation, or upon conclusory allegations that the defendant controls the corporation").

3

"telephone solicitations" as defined by 47 U.S.C. § 227(a)(4).  Indeed, the Complaint's own class definition describes the messages as "advertising sweepstakes or rewards,[5]" an admission that forecloses the possibility that repleading could transform a sweepstakes into a commercial solicitation.  Moreover, even if the messages could somehow qualify as solicitations, the Complaint contains no facts to support the conclusion that either Defendant actually sent the messages or directed anyone else to do so on their behalf.  The sole alleged connection is a chain of website redirects that proves nothing more than that TVM operates a website to which traffic was routed from external sources it did not control.

For each of these reasons, which are set forth in greater detail herein, the Court should stay these proceedings and compel arbitration or, in the alternative, dismiss Plaintiff's Complaint, in its entirety and with prejudice.

## FACTUAL ALLEGATIONS

Plaintiff Richard Kontas resides in Burbank, California.  (Compl. ¶ 18).  This is not his first TCPA lawsuit, though it appears it is his first in New York.[6]  Those suits have apparently proven lucrative enough for Plaintiff that, as the Complaint details, he now makes a considerable effort to find someone—anyone—to sue when he receives an unsolicited call or text.

According to the Complaint, "[b]etween October and November of 2022," Plaintiff received "at least seven (7) unsolicited and unconsented text messages."  (Compl. ¶ 28).  Although Plaintiff speculates these were sent by "Defendants or someone acting on their behalf" (*id.*), the Complaint concedes that "[n]one of the messages identified the sender, or on whose behalf the

---

[5] (Compl. ¶ 60).

[6] *See, e.g., Kontas v. LiveFree Emergency Response, Inc.,* Case No. 2:22-cv-07019 (C.D. Cal.) (filed 9/28/2022); *Kontas v. Vercy L.L.C., et al.*, Case No. 8:23-cv-00895 (C./D. Cal.) (filed 5/20/2023); *Kontas v. Research Strategies, Inc.*, Case No. 2:23-cv-05961 (C.D. Cal) (filed 7/24/2023).

4

texts were sent" (Compl. ¶ 29). The Complaint also details how those messages were sent from seven different phone numbers with area codes spanning multiple states, including Florida, California, Oklahoma, Arizona, and New Jersey, none of which is Missouri, where Interest Media is headquartered, or New York, where TVM maintains its registered office. (Compl. ¶ 31). Accordingly, Plaintiff does not allege that any of the numbers has any connection to either Defendant. Rather, the Complaint attributes the text to them solely because of his convoluted efforts to identify the parties responsible for them.

The Complaint details how, "[i]n order to identify the party(ies) responsible for sending these texts, after having received all seven texts, Plaintiff followed each link." (Compl. ¶ 37). Plaintiff alleges that "[e]ach link led to a page on the site pendingprize.com, which displayed a 'lucky number' that the recipient could purportedly use to win a prepaid Visa gift card." (Compl. ¶ 38). Plaintiff does not claim that either Defendant owns "pendingprize.com," and they do not. Plaintiff then alleges that "[i]n each instance, clicking the 'lucky number' led Plaintiff to a tracking page at imtrk.go2cloud.org," and that "[t]his page repeated the advertisement for a potential to win a prepaid Visa gift card." (Compl. ¶ 39). Plaintiff does not allege that either Defendant owns "go2cloud.org," and they do not. The Complaint further alleges that "[t]he tracking page automatically redirected to another URL, primerewardspot.com; which after clicking continue prompted Plaintiff to enter his name and contact information in order to proceed." (Compl. ¶ 39).[7]

The Complaint concedes that Plaintiff's interaction with these websites was deliberate and calculated. The Complaint alleges that "[a]fter Plaintiff had received a number of those unwanted text messages, for investigative purposes, he entered information on that link." (Compl. ¶ 40).

---

[7] Curiously, the photo included in the complaint of the first page with the URL "primerewardspot.com" is identical to the "go2cloud.org" page from which Plaintiff was purportedly redirected, perhaps suggesting an alteration of that photo. (*See* Compl. ¶ 41).

5

After entering this information, Plaintiff was "brought to a page that indicated 'The gift card offers you're looking for are currently unavailable. Hang tight! Here are some BONUS offers that you've unlocked.'" (Compl. ¶ 40). From this chain of clicks and redirects, Plaintiff attempts to connect Defendants to the text messages through a series of inferential steps. The Complaint alleges that "'PrimeRewardSpot' is an assumed name registered with the New York Secretary of State to Third Victory Media, LLC, who upon information and belief own and operate primerewardspot.com." (Compl. ¶ 42). The Complaint further alleges that "[t]he URL go2cloud.org is a domain owned by TUNE, Inc., who also own hasoffers.com." (Compl. ¶ 43). According to the Complaint, "[w]hile attempting to visit imtrk.go2cloud.org currently displays a blank page, imtrk.hasoffers.com displays a privacy policy disclosing that the site is owned or operated by Interest Media." (Compl. ¶ 44). Based on these attenuated connections, the Complaint speculates that there must be "close affiliations between the parties who own and/or operate the various websites Plaintiff was directed to by the links in the text messages," and then concludes that "Defendants and/or their agents are responsible for the text messages." (Compl. ¶ 45).

Perhaps recognizing the tenuous nature of that conclusion, the Complaint baselessly pleads that "Defendants directly placed the text messages at issue," but hedges by adding that "if some or all of the calls were placed by third-party/parties on behalf of Defendants, in the alternative, Defendants are vicariously liable for those calls." (Compl. ¶¶ 46–47). The Complaint also alleges that "Defendants *may have* hired, encouraged, permitted, and enjoyed the benefits of mass telemarketing by third-party telemarketers," then assumes that "[i]f Defendants did not directly send the calls to Plaintiff, Defendants' third-party telemarketers had actual and/or apparent authority to act on behalf of Defendants." (Compl. ¶¶ 52–53 (emphasis added)). The Complaint also further speculates that "Defendants controlled or had the right to control the marketing

6

activities of those acting on their behalf" and "acted as a principal to telemarketing agent(s) who were acting on their behalf."  (Compl. ¶¶ 55–56).[8]

In sum, the Complaint's factual allegations reveal nothing more than a convoluted post hoc investigation that failed to uncover any real link between the text messages and either Defendant.

## ARGUMENT

For the reasons set forth below, the Court must stay proceedings and compel arbitration under the Federal Arbitration Act.  Otherwise, the Complaint should be dismissed, in its entirety and with prejudice, pursuant to Federal Rules of Civil Procedure 12(b)(1), 12(b)(2), and/or 12(b)(6).

### I.    The Court Should Stay Proceedings and Compel Arbitration

As an initial matter, the Couret must stay these proceedings and compel arbitration under the Federal Arbitration Act ("FAA"), pursuant to the Terms of Use (the aforementioned "Terms") contained in primerewardspot.com, to which Plaintiff unquestionably agreed.  Under the FAA, written contracts to arbitrate "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."  9 U.S.C. § 2.

The Complaint itself establishes that Plaintiff affirmatively interacted with primerewardspot.com, which is the only thing tying any Defendant to this action.  The Complaint alleges that Plaintiff clicked links in the text messages that led through a tracking page at imtrk.go2cloud.org and ultimately to primerewardspot.com, which "after clicking continue

---

[8] Notably, the Complaint is devoid of any allegation that Interest Media had anything at all to do with the texts or any website Plaintiff may have discovered either by clicking links or as a result of any redirect.  Rather, Plaintiff simply presumes that TVM and Interest Media "acted in concert and as a joint enterprise" (Compl. ¶ 23) based solely on its "belief" that  they are "substantially interrelated companies" because they allegedly "share multiple mailing and office addresses, as well as multiple corporate officers, including Jeremy Matthew Hogatt, Kent Freeburg, and Mike Stephens" Compl. ¶ 22).

7

prompted Plaintiff to enter his name and contact information in order to proceed." (Compl. ¶ 39). The Complaint further alleges that Plaintiff, "for investigative purposes, … entered information on that link." (Compl. ¶ 40). By clicking "continue" and entering his personal information on primerewardspot.com, Plaintiff manifested assent to the site's Terms.

In this regard, the entry page of primerewardspot.com prominently displays an agreement that by clicking continue the viewer agrees to the Privacy Policy and Terms and Use (the "Terms"), both of which are hyperlinked. The Terms prominently include a "Notice of Agreement to Arbitrate and Class Action Waiver" which states that "[b]y accepting these Terms, you agree to the agreement to arbitrate and class action waiver contained in Section 6 of these Terms below." The Terms further provide that "[c]ontinued use of or access to the Website shall be deemed to constitute your consent to be bound by the terms of this Agreement and shall be enforceable in the same way as if it was signed by you." Section 6 of the Terms contains a comprehensive arbitration provision, which states:

> You and the Company agree that any and all disputes, claims, or controversies of any kind arising out of or relating to (a) your use of or access to the Website, (b) any products or services offered, marketed, sold, or provided in connection with the Website, or (c) any communications, calls, texts, or other contacts made to you after you opt in, shall be resolved exclusively through final and binding arbitration, rather than in court, except that either party may bring an individual claim in small claims court if it qualifies.

If the Court credits Plaintiff's conclusory allegations of a connection between the at-issue texts and TVM's website, the foregoing arbitration agreement would clearly encompass all of Plaintiff's claims here.[9]

---

[9] Although Plaintiff has not actually alleged a connection between TVM's website and the at-issue texts, and there does not appear to be one, he nonetheless thinks such a connection exists because the texts included a link to an unaffiliated website that somehow indirectly linked to primerewardspot.com. For the reasons set forth below, Defendant's respectfully submit that connection is too tenuous to support any claim, and the Court could simply dismiss this matter outright. If, however, the Court finds Plaintiff's conclusory allegations of a connection between

The arbitration provision also extends beyond the website operator to "Covered Parties," which are defined to include "the Company and against its parents, subsidiaries, affiliates, predecessors, successors, assigns, agents, service providers, licensors, vendors, marketing partners, and any other third parties that contact you in connection with your opt-in or the services offered." The Terms further state that "each Covered Party is an intended third-party beneficiary of this Agreement to Arbitrate and may enforce it to the same extent as the Company, including compelling arbitration of claims brought by you." The Terms also include a class action waiver, which states: "All claims must be brought solely in an individual capacity, and not as a plaintiff or class member in any class, collective, representative, or private attorney general action, including but not limited to claims under the Telephone Consumer Protection Act or state privacy statutes."

The foregoing provisions are valid and fully enforceable. *See, e.g., Meyer v. Uber Technologies, Inc.*, 868 F.3d 66, 75–80 (2d Cir. 2017); *Whitt v. Prosper Funding LLC*, No. 1:15-cv-136-GHW, 2015 U.S. Dist. LEXIS 91413, at *10–12 (S.D.N.Y. July 14, 2015). The website provided "reasonably conspicuous" notice of the Terms, which are themselves clear and unambiguous, and Plaintiff "unambiguously manifested his assent" to those Terms both by using the website and by entering his personal data on it. *See Meyer*, 868 F3d at 79. Regarding the latter, Plaintiff does not and cannot deny he interacted with the website. The Complaint not only admits it, Plaintiff's entire theory of Defendants' liability depends on his investigation of the site, which supposedly manifested a connection to the at-issue texts. Accordingly, this matter must be stayed in favor of arbitration. *See* 9 U.S.C. § 3.

---

the texts and TVM's website to be sufficient at this stage of the proceedings, Plaintiff's claims necessarily arise out of or relate to "products or services offered, marketed, sold, or provided in connection with" primerewardspot.com. Accordingly, this matter would be subject to arbitration.

9

**II.    Plaintiff's Claims Must be Dismissed Pursuant to Rule 12(b)(1) Because Plaintiff Lacks Standing to Assert Claims Against Defendants**

In the event that the Court determines that any portion of Plaintiff's claims are not subject to arbitration, it must dismiss those claims for lack of standing.  Standing is "the threshold question in every federal case, determining the power of the court to entertain the suit." *Warth v Seldin*, 422 US 490, 498 (1975).  "The party invoking federal jurisdiction bears the burden of establishing these elements." *Lujan v Defenders of Wildlife*, 504 US 555, 561 (1992).

To have standing, "[t]he plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v Robins*, 578 US 330, 338 (2016).  The Second Circuit has held that the receipt of unsolicited text messages, without any additional injury, satisfies the injury-in-fact requirement for Article III standing. *Melito v. Experian Mktg. Solutions, Inc.*, 923 F.3d 85, 88 (2019).  However, Plaintiff does not and cannot allege the second and third elements of the standing analysis, traceability and redressability, given the utter lack of any non-speculative connection between Defendants and the subject text messages.

"The traceability requirement for Article III standing means that the plaintiff must 'demonstrate a causal nexus between the defendant's conduct and the injury.'" *Rothstein v UBS AG*, 708 F3d 82, 91 (2d Cir 2013) (quoting *Heldman v. Sobol*, 962 F.2d 148, 156 (2d Cir. 1992)).  Although "the 'fairly traceable' standard is lower than that of proximate cause," *id.*, the injury cannot be "the result [of] the independent action of some third party not before the court." *Lujan*, 504 US at 560-561 (quoting *Simon v. Eastern Ky. Welfare Rights Organization*, 426 U.S. 26, 41-42 (1976)).  Plaintiff has not and cannot allege traceability here because the Complaint does not plead any facts beyond mere speculation sufficient to establish that either TVM or Interest Media sent, initiated, or was responsible for the text messages.

10

The redressability element of Article III standing requires that Plaintiff demonstrate it is "'likely,' as opposed to merely 'speculative,' that the injury will be 'redressed by a favorable decision.'" *Lujan*, 504 US at 561 (quoting *Simon*, 426 US at 38, 43)). Redressability and traceability are closely intertwined: where the plaintiff's injury is not fairly traceable to the defendant's conduct, a judgment against the defendant will not remedy the plaintiff's alleged harm. *See, e.g., Fulani v Brady*, 809 F Supp 1112, 1119 (S.D.N.Y. 1993) ("The second and third prongs—traceability and redressability—often dovetail; essentially, both seek a causal nexus between the plaintiff's injury and the defendant's assertedly unlawful act."). Accordingly, for the same reasons Plaintiff cannot establish traceability, he also has not and cannot allege redressability.

As discussed above, Plaintiff's theory connecting Defendants to the text messages rests on a multi-step inference chain that does not establish that Defendants had anything at all to do with the text messages being sent. The mere fact that the text messages contained a link that directed him to another website where he was then redirected to a website allegedly owned by one of the Defendants does not establish that Defendants caused any text message to be sent. Rather, it establishes at most the TVM is like any advertiser on any website.[10] A plaintiff aggrieved by the content on a website certainly does not have standing to sue every entity whose ad is placed on that site. Even if that ad links back to the advertiser's site, there is nothing connecting Plaintiff's injury to anything the advertiser might have done. For the same reason, Plaintiff lack standing to sue Defendants here. *See, e.g., Bank v Alarm.com Holdings, Inc.*, 828 F. App'x 5, 8 (2d Cir. 2020) ("Bank failed to allege that either Alliance or Alarm.com initiated the phone calls of which he complains, which is fatal to each of his claims."); *Cacho v McCarthy & Kelly LLP*, 739 F Supp 3d

---

[10] The lack of traceability is particularly acute for Interest Media, which Plaintiff only attempts to connect through a privacy policy on a separate website, imtrk.hasoffers.com, and through a nebulous allegation of a "joint enterprise."

195, 214 (S.D.N.Y. 2024) (dismissing TCPA claims because "Defendant did not place those calls directly" and "Plaintiff's well-pleaded allegations do not plausibly suggest that the telemarketers who contacted Plaintiff were agents of Defendant acting with actual authority").[11]

Additionally, as Plaintiff's own allegations show, the text messages were sent by an unknown third party with no alleged connection to TVM and Interest Media. Accordingly, there is nothing to suggest that a judgment against Defendants would prevent that third party from continuing to send additional text messages, either to Plaintiff or any other consumer. The injury of which Plaintiff complains would persist regardless of the outcome of this litigation, because the actual sender of the messages is not before the Court. *See, e.g.*, *Lujan*, 504 US at 569 (holding there is no redressability where the bad actor "were not parties to the suit, and there is no reason they should be obliged to honor an incidental legal determination the suit produced"); *Simon*, 426 US at 41-42 ("Art. III still requires that a federal court act only to redress injury that fairly can be traced to the challenged action of the defendant, and not injury that results from the independent action of some third party not before the court.").

Plaintiff's own admissions that he is essentially a professional TCPA plaintiff further undermine his standing. The Complaint reveals that Plaintiff, who has repeatedly brought TCPA claims in California, deliberately engaged in a multi-step "investigative" process here: he received the text messages, clicked the links, navigated through pendingprize.com, followed the tracking redirects, and ultimately "entered information" on a website allegedly owned by TVM—all, by his

---

[11] *See also USAnovic v Americana, L.L.C.*, 775 F Supp 3d 1133, 1139 (D Nev 2025) ("For a call to fall under the TCPA, the caller must either (1) directly make the call, or (2) have an agency relationship with the person who made the call."); *Smith v Vision Solar LLC*, No. 20-2185, 2020 U.S. Dist. LEXIS 172224, at *9 (E.D. Pa. Sep. 21, 2020) ("In a TCPA case, the plaintiff must plead facts to justify that a call came from the defendant."); *Zelma v Burke*, Civil Action No. 2:16-02559-CCC-MF, 2017 U.S. Dist. LEXIS 1209, at *11 (D.N.J. Jan. 4, 2017) (dismissing TCPA claims because "speculative assertions without 'further factual enhancement' are insufficient to state a claim upon which relief can be granted" (quoting *Ashcroft v Iqbal*, 556 US 662, 678 2009))).

12

own admission, "for investigative purposes." (Compl. ¶¶ 37–40).  The Complaint also reveals that Plaintiff previously speculated that someone else sent the texts, admitting that he erroneously filed multiple TCPA lawsuits arising from the same text messages.  (Compl. ¶ 89 (alleging Plaintiff "incurred costs — through their counsel — in filing lawsuits against a different entity in order to identify Defendant")).  All of this was in addition to filing several other TCPA suits involving at least two different cell phone numbers.[12]

This is not the conduct of an ordinary consumer who was harassed by unwanted telemarketing.  It is the conduct of a plaintiff who was actively seeking to build a case to make money.  As one court has observed, "it is unfathomable that Congress considered a consumer who files TCPA actions as a business when it enacted the TCPA as a result of its 'outrage over the proliferation of prerecorded telemarketing calls to private residences, which consumers regarded as an intrusive invasion of privacy and a nuisance.'"  *Stoops v Wells Fargo Bank, N.A.*, 197 F Supp 3d 782, 805 (WD Pa 2016) (holding that a TCPA plaintiff with financial motives lacked both constitutional and prudential standing) (quoting *Leyse v Bank of Am. N.A.*, 804 F3d 316, 325 (3d Cir. 2015)).  For this additional reason, Plaintiff's self-inflicted injuries, which have no connection to any alleged or actual conduct by Defendants, do not satisfy Article III standing.

### III.    Plaintiff's Claims Against Interest Media Must Be Dismissed Pursuant to Rule 12(b)(2) Because the Court Lacks Personal Jurisdiction Over That Defendant

Any claim against Interest Media that is not subject to arbitration must also be dismissed for lack of personal jurisdiction.  Personal jurisdiction over an out-of-state defendant must comport

---

[12] *See, e.g.,* Case No. 2:22-cv-07019 (C.D. Cal.) (TCPA suit regarding pre-recorded voice call to the number "310-XXX-5684," a different cellular phone than the one at issue here (*see* Doc. 1, ¶ 15)); Case No. 8:23-cv-00895 (C.D. Cal.) (Doc. 1) (TCPA suit regarding pre-recorded voice call to " Plaintiff's cellular telephone number ending in 2182," which appears to be the same number as is at issue here (*see* Doc. 1, ¶ 10)); Case No. 2:23-cv-05961 (C.D. Cal) (TCPA suit involving pre-recorded voice call to an unspecified number (*see generally* Doc. 1)).

13

332004978v.5

with both the forum state's long-arm statute and the Due Process Clause of the Fourteenth Amendment. *Bank Brussels Lambert v Fiddler Gonzalez & Rodriguez*, 171 F3d 779, 784 (2d Cir 1999). "[T]he plaintiff bears the burden of establishing that the court has jurisdiction over the defendant." *Id*.

Under New York's long-arm statute, N.Y. C.P.L.R. § 302(a)(1), a court may exercise specific jurisdiction over a non-domiciliary who "transacts any business within the state or contracts anywhere to supply goods or services in the state." "The CPLR 302 (a) (1) jurisdictional inquiry is twofold: under the first prong the defendant must have conducted sufficient activities to have transacted business in the state, and under the second prong, the claims must arise from the transactions." *Rushaid v Pictet & Cie*, 28 N.Y.3d 316, 323 (2016). To satisfy due process, a defendant must have "minimum contacts" with the forum state such that maintenance of the suit does not offend "traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945). "[T]he relationship must arise out of contacts that the 'defendant himself' creates with the forum State." *Walden v Fiore*, 571 US 277, 284 (2014). The "unilateral activity of another party or a third person is not an appropriate consideration when determining whether a defendant has sufficient contacts with a forum State to justify an assertion of jurisdiction." *Helicopteros Nacionales De Colombia v Hall*, 466 US 408, 417 (1984).

Interest Media is a Delaware corporation with its principal place of business in Missouri. (Compl. ¶ 20). The Complaint does not allege that Interest Media has any independent contact with New York—no office, no employees, no physical presence, no contracts, and no direct business transactions conducted there. Instead, the Complaint relies entirely on Interest Media's alleged relationship with co-Defendant TVM, asserting: (i) that Interest Media "has common ownership with TVM, and worked closely with TVM, in overlapping roles" (Compl. ¶ 13); (ii) that

14

Interest Media "acted as a joint enterprise with TVM" (Compl. ¶ 14); and (iii) that "[b]y working closely with TVM and/or acting as a joint enterprise with TVM, Interest Media knowingly and purposefully availed itself to the State of New York" (Compl. ¶ 15). These are textbook conclusory statements insufficient to establish personal jurisdiction.

Merely alleging shared officers and addresses does not establish that Interest Media transacted business in New York or directed conduct toward the forum. *See, e.g., Parsons v Kal Kan Food, Inc.*, 68 AD3d 1501, 1503 (3d Dept 2009) (no personal jurisdiction over a company even where it "shares an address and phone number with defendant, uses the same Web site and promotional brochure, and the same individuals are officers and directors of both corporations"); *Bank of Am. v Apollo Enter. Solutions, LLC*, 2010 U.S. Dist. LEXIS 116396, at *13 (S.D.N.Y. Nov. 1, 2010) (despite overlapping officers, "[plaintiff] has not sufficiently pleaded an alter ego relationship between [the two defendants] to make a prima facie showing of personal jurisdiction over [the non-resident defendant]"). *C.f. De Jesus v Sears, Roebuck & Co.*, 87 F3d 65, 70 (2d Cir. 1996) ("To overcome 'the "presumption of separateness" afforded to related corporations,' Plaintiffs must come forward with 'the showing of actual domination required to pierce the corporate veil.'" (quoting *Williams v McAllister Bros., Inc.*, 534 F2d 19, 22 (2d Cir 1976)).

Plaintiff's jurisdictional problem is compounded by the remoteness of Interest Media's alleged connection to this case. Interest Media is supposedly connected to the text messages only by a website through which Plaintiff was allegedly routed (imtrk.go2cloud.org), which was purportedly owned not by Interest Media but by TUNE, Inc., its alleged affiliate. The Complaint does not allege that Interest Media operated any website targeting New York consumers—nor, for that matter, does it allege that TUNE has any contacts with New York, because Plaintiff is located

15

in California.  Operating a passive website does not alone constitute "transacting business" in New York.  *See, e.g., Citigroup Inc. v. City Holding Co.*, 97 F. Supp. 2d 549, 565 (S.D.N.Y. 2000).

Furthermore, even if the joint enterprise allegations had factual support, which they do not, a joint enterprise between two entities does not automatically confer personal jurisdiction over one entity based on the other's forum contacts.  "Each defendant's contacts with the forum State must be assessed individually." *Calder v Jones*, 465 US 783, 790 (1984); *see also Rush v. Savchuk*, 444 U.S. 320, 332 (1980) ("The requirements of International Shoe … must be met as to each defendant over whom a state court exercises jurisdiction"); *see also Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 781 n.13 (1984) (jurisdiction over a parent corporation does not automatically establish jurisdiction over a wholly owned subsidiary).  The Complaint's attempt to impute TVM's New York contacts to Interest Media through conclusory joint enterprise allegations is precisely the type of jurisdictional bootstrapping that due process prohibits.

## IV.    Plaintiff's Claims Fail as a Matter of Law Under Rule 12(b)(6)

Even if the Court were to find standing and personal jurisdiction, any claim not subject to arbitration must also be dismissed because both counts of the Complaint fail to state a claim upon which relief can be granted.  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*  "Factual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 US at 555.  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*

16

332004978v.5

Because conclusory statements and speculation are all that the Complaint offers, it must be dismissed in its entirety and with prejudice.  Counts I and II of Plaintiff's Complaint purport to assert claims under Section 227(c) of the TCPA.  The corresponding regulation that is the focus of Count I, 47 C.F.R. § 64.1200(c)(2), prohibits any person or entity from "initiat[ing] any telephone solicitation to … [a] residential telephone subscriber who has registered his or her telephone number on the national do-not-call registry."  Count II concerns 47 C.F.R. § 64.1200(d)(4), which requires that "[a] person or entity making a call for telemarketing purposes must provide the called party with the name of the individual caller, the name of the person or entity on whose behalf the call is being made, and a telephone number or address at which the person or entity may be contacted."  The private right of action under § 227(c)(5) runs only to persons who receive calls "in violation of the regulations prescribed under this subsection," meaning the regulations protecting "residential telephone subscribers."

The Complaint alleges that the text messages were sent to Plaintiff's cell phone number. As an initial matter, while a court in this district has concluded that cell phones qualify as a "residential telephone," *Cacho*, 739 F Supp 3d at 208 ("The Complaint amply alleges that Plaintiff was a residential subscriber under the TCPA notwithstanding his use of a cellphone."), a number of courts have disagreed.  *See, e.g., Gaker v Q3M Ins. Solutions*, No. 3:22-CV-00296-RJC-DSC, 2023 U.S. Dist. LEXIS 44919, at *7-8 (W.D.N.C. Feb. 7, 2023) (concluding that § 227(c) and § 64.1200(c) and (d) do not encompass calls to cell phones, which "do not present the same concerns as residential telephones" and that "the authority rests with Congress to amend the TCPA and bring cell phones within its protections"); *Shelton v. Fast Advance Funding, LLC*, 378 F. Supp. 3d 356, 362 n.7 (E.D. Pa. 2019) ("the plain language of 'residential telephone' describes a telephone used by individuals in the home, and not a cellular telephone, which can be used

17

332004978v.5

anywhere"); *Cunningham v Sunshine Consulting Group, LLC*, No. 3:16-2921, 2018 U.S. Dist. LEXIS 121709, at *16 (M.D. Tenn. July 20, 2018) (because "Plaintiff alleges only calls to his cellular phone … he fails to state a claim for relief under 47 U.S.C. § 227(c)(5)").

While Defendants respectfully submit that these latter cases are the better reasoned, even if Plaintiff does qualify as a "residential telephone subscriber," the Complaint fails to allege that the texts constituted "telephone solicitations."  The TCPA defines "telephone solicitation" as "the initiation of a telephone call or message for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services."  47 U.S.C. § 227(a)(4).  The FCC's implementing regulations incorporate this definition.  *See* 47 C.F.R. § 64.1200(f)(13), (15).  Accordingly, a communication that does not encourage the purchase, rental, or investment in property, goods, or services cannot support a claim under the TCPA.  *Gerrard v Acara Solutions, Inc.*, 469 F. Supp. 3d 96, 99 (W.D.N.Y. 2020) ("Because the text messages identified in the Complaint are neither advertisements nor telemarketing, [plaintiff] fails to state a claim under the TCPA.").

Although Plaintiff asserts that he received seven unsolicited texts, the Complaint does not allege that he was ever asked to purchase, rent, or invest in any property, product, or service, either in the texts themselves or in the many layers through which he later navigated or was directed. Instead, the texts allegedly directed Plaintiff to a website (pendingprize.com) that invited him to check a "lucky number" for a purported chance at winning a prepaid Visa card.  (Compl. ¶ 30). This is, at most, a sweepstakes or prize promotion, not a solicitation to purchase, rent, or invest in property, goods, or services.  Only after multiple clicks and redirects did Plaintiff arrive at primerewardspot.com, which displayed a message that "[t]he gift card offers you're looking for are currently unavailable" and offered "BONUS offers." (Compl. ¶ 40).  However, the Complaint

18

does not describe the nature of these "BONUS offers" or explain how they constitute solicitations for the purchase of goods or services.

Additionally, to state a claim under both § 227(c)(5) and its implementing regulations, a plaintiff must allege that the defendant "initiat[ed]" the telephone solicitation or that the solicitation was made "by or on behalf of" the defendant.   47 C.F.R. § 64.1200(c); 47 U.S.C. § 227(c)(5).   A plaintiff must plead specific facts connecting the defendant to the challenged communications.  *See, e.g., Alarm.com Holdings*, 828 F App'x at 8 (dismissing TCPA claim because plaintiff "failed to allege any facts permitting an inference that either [of the defendants] initiated the phone calls of which he complains, that the calls were made on [defendant's] behalf, or that [defendant] was otherwise connected to those calls"); *Spark Energy*, 860 F App'x at 206 ("The District Court properly dismissed [plaintiff's] TCPA claim because the complaint does not adequately plead that [defendant] was responsible for the alleged calls."); *Cacho*, 739 F Supp 3d at 218 ("The Court need go no further than to observe that Plaintiff's Complaint is bereft of any allegation from which one could reasonably infer that Defendant knew or should have known that the telemarketers were violating the TCPA and its implementing regulations.").

Aside from conclusory allegations, the Complaint includes nothing to suggest that either Defendant sent the messages or directed a third party to send them on its behalf.  The only connection between TVM and the texts is that the tracking links ultimately redirected Plaintiff to primerewardspot.com.  But that does not establish that TVM sent or initiated the messages.  In the affiliate marketing context, which the Complaint's own allegations describe, it is common for web traffic to be directed to a website from external sources that the website operator does not control. The alleged connection to Interest Media is even more attenuated.  Its only connection is that the

19

owner of a tracking page (imtrk.go2cloud.org) linked to Interest Media's privacy policy on a *different* website (imtrk.hasoffers.com). (Compl. ¶¶ 43–44).

The Complaint's conclusory joint enterprise allegations do not cure these defects. A "joint enterprise" theory of liability requires the plaintiff to plead facts demonstrating that: "(1) two or more persons must enter into a specific agreement to carry on an enterprise for profit; (2) their agreement must evidence their intent to be joint venturers; (3) each must make a contribution of property, financing, skill, knowledge, or effort; (4) each must have some degree of joint control over the venture; and (5) there must be a provision for the sharing of both profits and losses." *ITEL Containers Intl. Corp. v Atlanttrafik Express Serv., Ltd.*, 909 F2d 698, 701 (2d Cir 1990). [13] Plaintiff has not even attempted to allege any of these elements.

The Complaint states only that TVM and Interest Media "are substantially interrelated companies" that "share multiple mailing and office addresses, as well as multiple corporate officers, including Jeremy Matthew Hogatt, Kent Freeburg, and Mike Stephens" (Compl. ¶ 22), and that the two entities "acted in concert and as a joint enterprise" (Compl. ¶ 23). These allegations are made "upon information and belief" and are devoid of any factual details regarding the nature of any agreement between TVM and Interest Media, how revenues or costs were shared, who controlled the decision to send the text messages at issue, what specific "overlapping roles" existed between the entities, or how either entity had an equal right to control the enterprise.

---

[13] *See also Abdelhamid v Altria Group, Inc.*, 515 F Supp 2d 384, 394 (S.D.N.Y. 2007) ("To allege a joint enterprise, a plaintiff must allege that there was '(1) an express or tacit agreement to participate in a common plan . . . to commit a tortious act, (2) tortious conduct by each defendant, and (3) the commission by one of the defendants, in pursuance of the agreement, of an act that constitutes a tort.'" (quoting @*Wireless Enters., Inc. v. Al Consulting, LLC*, No. 05 Civ. 6176, 2006 U.S. Dist. LEXIS 79874, 2006 WL 3370696, at *8 (W.D.N.Y. Oct. 30, 2006))); *De Jesus*, 87 F3d at 70 ("To overcome 'the "presumption of separateness" afforded to related corporations,' Plaintiffs must come forward with 'the showing of actual domination required to pierce the corporate veil.'" (quoting *Williams v McAllister Bros., Inc.*, 534 F2d 19, 22 (2d Cir 1976))).

20

332004978v.5

Shared officers and overlapping addresses, without more, do not establish a joint enterprise. *McAnaney v Astoria Fin. Corp.*, 665 F Supp 2d 132, 144 (E.D.N.Y. 2009) ("evidence that the bank holding company defendants and their subsidiaries shared common officers and directors…, without more than otherwise indicated in the instant case, is insufficient as a matter of law to establish alter ego liability of a parent corporation").[14]

For all of the foregoing reasons, Plaintiff's Complaint must be dismissed, in its entirety and with prejudice, pursuant to Federal Rule of Civil Procedure 12(b)(6).

## CONCLUSION

For each of the reasons stated above, the Court must stay proceedings and compel arbitration under the Federal Arbitration Act, 9 U.S.C. § 2. In the alternative, the Court should dismiss Plaintiff's Complaint, in its entirety and with prejudice, pursuant to Fed. R. Civ. P. 12(b)(1), 12(b)(2), and 12(b)(6).

---

[14] *See also, Parsons*, 68 A.D.3d at 1503 (no personal jurisdiction over a company even where it "shares an address and phone number with defendant, uses the same Web site and promotional brochure, and the same individuals are officers and directors of both corporations"); *Apollo Enter. Solutions*, 2010 U.S. Dist. LEXIS 116396, at *13 (despite overlapping officers, "[plaintiff] has not sufficiently pleaded an alter ego relationship between [the two defendants] to make a prima facie showing of personal jurisdiction over [the non-resident defendant]").

21

Dated: New York, New York
         May 6, 2026

                                        */s/ Richard W. Boone Jr.*
                                        Richard W. Boone Jr.
                                        Kieran R. Lang
                                        **WILSON, ELSER, MOSKOWITZ,
                                        EDELMAN & DICKER LLP**
                                        150 E. 42nd Street
                                        New York, NY 10017
                                        Tel.  (212) 490-3000
                                        Fax.  (212) 490-3038
                                        richard.boone@wilsonelser.com
                                        kieran.lang@wilsonelser.com

                                        *Attorneys for Defendants
                                        Third Victory Media, LLC and
                                        Interest Media, Inc.*

                                        22

**CERTIFICATION**

The foregoing MEMORANDUM OF LAW was prepared on a computer, using Microsoft Word, the typeface is Times New Roman, the main body is in 12-point font with 1-inch margins throughout, the footnotes are in 12-point font, and the length is fewer than 21 pages double-spaced.

/s/ *Richard W. Boone Jr.*

**Attorney for Defendants**
**Third Victory Media, LLC and**
**Interest Media, Inc.**

332004978v.5

**CERTIFICATE OF SERVICE**

I hereby certify that on May 6, 2026, I electronically mailed the foregoing document to plaintiff in accordance with the Judge's Order dated April 23, 2026.

*/s/ Richard W. Boone Jr.*

**Attorney for Defendants**
**Third Victory Media, LLC and**
**Interest Media, Inc.**

332004978v.5