## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| RICHARD KONTAS, individually and on behalf of all others similarly situated,<br><br>          Plaintiff,<br><br>v.<br><br>THIRD VICTORY MEDIA, LLC and INTEREST MEDIA, INC.,<br><br>          Defendants. | Civil Action No.: 7:25-cv-10227-PMH |

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF DEFENDANTS'
MOTION TO COMPEL ARBITRATION OR, IN THE ALTERNATIVE, TO DISMISS
PLAINTIFF'S CLASS ACTION COMPLAINT**

WILSON, ELSER, MOSKOWITZ,
EDELMAN & DICKER LLP
Richard W. Boone Jr.
Kieran R. Lang
150 East 42nd Street
New York, NY 10017
Telephone: (212) 490-3000
Fax: (212) 490-3038
E-mail: richard.boone@wilsonelser.com
E-mail: kieran.lang@wilsonelser.com

*Attorneys for Defendants Third Victory
Media, LLC and Interest Media, Inc.*

337237071v.3

**TABLE OF CONTENTS**

**Page**

PRELIMINARY STATEMENT ........................................................................................................1

ARGUMENT .................................................................................................................................2

      I.      The Court Must Compel Arbitration .......................................................................2

      II.     Plaintiff Lacks Article III Standing .........................................................................6

      III.    The Court Lacks Personal Jurisdiction Over Interest Media .................................8

      IV.    The Complaint Fails to State a Claim Under Rule 12(b)(6) .................................11

      IV.    Plaintiff's Request for Leave to Amend Should Be Denied. ................................13

CONCLUSION .............................................................................................................................14

i

337237071v.3

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Abboud v. Circle K Stores Inc.*,
731 F. Supp. 3d 1094 (D. Ariz. 2024) .................................................................7, 11

*Bandler v. Town of Woodstock*,
832 F. App'x 733 (2d Cir. 2020) ...............................................................................8

*Bank v. Alarm.com Holdings, Inc.*,
828 F. App'x 5 (2d Cir. 2020) .............................................................................7, 12

*Bank v. Digital Media Solutions, Inc.*,
No. 22-CV-293(EK)(LB), 2023 U.S. Dist. LEXIS 18696 (E.D.N.Y. Feb. 3,
2023) ...........................................................................................................................7

*Bank v GoHealth*,
No. 19-CV-5459, 2021 U.S. Dist. LEXIS 89871 (EDNY May 11, 2021) ...............7

*Bank v. Spark Energy, LLC*,
860 F. App'x 205 (2d Cir. 2021) .............................................................................12

*Cacho v. McCarthy & Kelly LLP*,
739 F. Supp. 3d 195 (S.D.N.Y. 2024).................................................................7, 12

*Carrodine v. Flatiron Media*,
(S.D.N.Y. 2023) ...................................................................................................10, 11

*Chesbro v. Best Buy Stores, L.P.*,
705 F.3d 913 (9th Cir. 2012) ...................................................................................11

*Cunningham v Sunshine Consulting Group, LLC*,
No. 3:16-2921, 2018 U.S. Dist. LEXIS 121709 (M.D. Tenn. July 20, 2018) .........13

*De Jesus v. Sears, Roebuck & Co.*,
87 F.3d 65 (2d Cir. 1996)...........................................................................................9

*Dean v. Town of Hempstead*,
527 F. Supp. 3d 347 (E.D.N.Y. 2021) .......................................................................8

*Druyan v. Jagger*,
508 F. Supp. 228 (S.D.N.Y. 2007) .............................................................................6

*Fox Corp. v. Media Deportes Mexico*,
801 F. Supp. 3d 217 (S.D.N.Y. 2025)........................................................................9

337237071v.3

*Gaker v Q3M Ins. Solutions*,
No. 3:22-CV-00296-RJC-DSC, 2023 U.S. Dist. LEXIS 44919 (W.D.N.C.
Feb. 7, 2023) ..............................................................................................................13

*Gerrard v. Acara Solutions, Inc.*,
469 F. Supp. 3d 96 (W.D.N.Y. 2020) ........................................................................11

*Hines v. Overstock.com, Inc.*,
380 F. App'x 22 (2d Cir. 2010) ..................................................................................6

*Hood v Westchester County Healthcare Corp.*,
2022 N.Y. Misc. LEXIS 48545, [Sup Ct, Westchester County Apr. 5, 2022] .........8

*ITEL Containers Int'l Corp. v. Atlanttrafik Express Serv., Ltd.*,
909 F.2d 698 (2d Cir. 1990).......................................................................................9

*Katz v. Focus Forward, LLC*,
22 F.4th 368 (2d Cir. 2022) ......................................................................................12

*Loper Bright Enterprises v. Raimondo*,
603 U.S. 369 (2024)...................................................................................................13

*Louie's Seafood Rest., LLC v Brown*,
199 A.D.3d 790 (2d Dep't 2021) ...............................................................................8

*Lujan v. Defenders of Wildlife*,
504 U.S. 555 (1992)....................................................................................................8

*Martinez v 1380 Hous. Dev. Fund Corp.*,
2024 NY Slip Op 30805[U] [Sup Ct, NY County 2024]............................................8

*McAnaney v. Astoria Fin. Corp.*,
665 F. Supp. 2d 132 (E.D.N.Y. 2009) ........................................................................9

*Meyer v. Uber Technologies, Inc.*,
868 F.3d 66 (2d Cir. 2017)......................................................................................5, 6

*Miholich v. Senior Life Insurance Co.*,
No. 21-cv-1123-WQH-AGS, 2022 U.S. Dist. LEXIS 23981 (S.D. Cal. Feb.
10, 2022) .....................................................................................................................7

*Parsons v. Kal Kan Food, Inc.*,
68 A.D.3d 1501 (3d Dept 2009) .................................................................................9

*RSM Prod. Corp. v. Fridman*,
643 F. Supp. 2d 382 (S.D.N.Y. 2009).......................................................................10

iii

*Schnabel v. Trilegiant Corp.*,
    697 F.3d 110 (2d Cir. 2012)................................................................................................5

*Shelton v. Fast Advance Funding, LLC*,
    378 F. Supp. 3d 356 (E.D. Pa. 2019) ...............................................................................13

*Simon v. Eastern Ky. Welfare Rights Organization*,
    426 U.S. 26 (1976)..............................................................................................................8

*Soliman v. Subway Franchisee Advertising Fund Trust, Ltd.*,
    999 F.3d 828 (2d Cir. 2021)................................................................................................5

*Specht v. Netscape Commc'ns Corp.*,
    306 F.3d 17 (2d Cir. 2002)..................................................................................................4

*Starke v. SquareTrade, Inc.*,
    913 F.3d 279 (2d Cir. 2019).................................................................................................4

*Stoops v. Wells Fargo Bank, N.A.*,
    197 F. Supp. 3d 782 (W.D. Pa. 2016)..................................................................................8

*Thomson-CSF, S.A. v Am. Arbitration Assn.*,
    64 F3d 773 [2d Cir 1995]....................................................................................................3

*Wood ex rel. United States v. Applied Research Assoc*,
    328 F. App'x 744 (2d Cir. 2009) .......................................................................................13

*Walden v. Fiore*,
    571 U.S. 277 (2014)...........................................................................................................10

*Wyo. State Treas. v. Moody's Invs. Serv. (In re Lehman Bros. Mtge.-Backed Sec.
    Litig.)*,
    650 F.3d 167 (2d Cir. 2011)...............................................................................................13

*Zachman v. Hudson Valley Fed. Credit Union*,
    49 F.4th 95 (2d Cir. 2022) ...................................................................................................4

**Statutes**

47 U.S.C. § 227(a)(4)..............................................................................................................11

47 U.S.C. § 227(c) .............................................................................................................12, 13

Federal Arbitration Act .........................................................................................................1, 2

Federal Arbitration Act, 9 U.S.C. § 2 ................................................................................1, 14

v

**Rules**

Federal Rule of Civil Procedure Rule 12(b)(1)...........................................................................1, 14

Federal Rule of Civil Procedure Rule 12(b)(2)...........................................................................1, 14

Federal Rule of Civil Procedure Rule 12(b)(6)...........................................................1, 11, 12, 14

337237071v.3

Defendants Third Victory Media, LLC ("TVM") and Interest Media, Inc. ("Interest Media") (collectively, "Defendants") respectfully submit this Reply Memorandum of Law in Further Support of their Motion to Compel Arbitration or, in the Alternative, to Dismiss Plaintiff Richard Kontas' ("Plaintiff") Class Action Complaint (the "Complaint") (Dkt. No. 1) ("Motion"), pursuant to the Federal Arbitration Act, 9 U.S.C. § 2, and Rules 12(b)(1), 12(b)(2), and 12(b)(6) of the Federal Rules of Civil Procedure.

## PRELIMINARY STATEMENT

Plaintiff's Memorandum in Opposition to Defendants' Motion to Compel Arbitration and/or Dismiss ("Opposition") (Dkt. 23) only confirms both that this dispute is subject to arbitration and that the Complaint is fundamentally deficient and ripe for dismissal.

The Court must grant Defendants' motion to compel arbitration under the Federal Arbitration Act because Plaintiff indisputably agreed to the Terms of Use on primerewardspot.com, which contain a broad arbitration provision, class action waiver, and delegation clause. The Opposition does not overcome this threshold ground for relief because, while Plaintiff's challenges to the Terms attached to Defendants' opening papers, the Terms that existed in December 2022—the date Plaintiff now claims he accessed the site—are materially identical. Moreover, the arbitration language was prominently displayed, and Plaintiff's own insistence that he thoroughly examined the site confirms he was aware of the Terms when he affirmatively clicked "continue" and entered his personal information.

The Court could also instead just dismiss this case in its entirety, because even with the additional facts offered in support of his Opposition, Plaintiff still cannot show standing, personal jurisdiction over Interest Media, and allegations sufficient to state a claim for relief. Among other deficiencies: Plaintiff does not meaningfully address the lack of Article III standing; Plaintiff still offers no basis for personal jurisdiction over Interest Media beyond conclusory "joint enterprise"

1

337237071v.3

allegations; and Plaintiff's own class definition—describing the messages as "advertis[ed] sweepstakes or rewards"—fatally undermines his claim that the messages were "telephone solicitations" under the TCPA.

For each of these reasons, and those set forth in Defendants' opening Memorandum, the Court should compel arbitration or dismiss this action with prejudice.

## ARGUMENT

Plaintiff's Opposition fails to overcome Defendants' motion to compel arbitration or cure the fundamental deficiencies in his claims.  Accordingly, for the reasons set forth in Defendants' opening Memorandum and discussed further herein, the Court must either compel arbitration of this dispute or simply dismiss it.

## I.     The Court Must Compel Arbitration

As established in Defendants' Memorandum, Plaintiff undeniably agreed to the Terms of Use on primerewardspot.com.  Accordingly, the Court must stay proceedings and compel arbitration under the Federal Arbitration Act ("FAA").

In response, Plaintiff's Opposition first complains that Defendants' opening papers "attached an image from the 2026 version of the webpage, rather than that from 2022."  (Dkt. 23, p. 6).  However, Plaintiff first specified December 29, 2022 as the date he accessed the site in his declaration, not in the Complaint, which states only that Plaintiff "followed each link" and "for investigative purposes, he entered information on that link," without identifying any date.  (Compl. ¶¶ 37, 40; Kontas Decl. ¶¶ 9, 15).  Regardless, the terms in effect in 2022 (hereinafter, the "Terms") also contain a broad comprehensive arbitration provision, a class action waiver, and a delegation clause.  The former expressly requires arbitration of "any and all disputes or claims with or against any party that relate to or arise from your use of or access to the Website, or any products or

2

services sold, offered, or purchased through the Website." Although the 2022 arbitration agreement lacks the later agreement's express reference to "communications, calls, texts, or other contacts made after you opt in," the earlier Terms are plainly broad enough to encompass Plaintiff's claims against TVM and Interest Media.

Specifically as concerns Interest Media, although the 2022 agreement lacks the specific definition of "Covered Parties," the 2022 agreement's consent-to-contact provision authorizes contact by "the Company its subsidiaries, affiliates, or agents, and up to 30 of its Marketing Partners," a group that plainly includes Interest Media—at least according to Plaintiff. In this regard, all of Plaintiff's claims against Interest Media depend on his interaction with primerewardspot.com—the website governed by the Terms. Plaintiff cannot rely on that interaction to establish liability while simultaneously disclaiming the arbitration obligations that accompany his use of the website. The Complaint alleges that Interest Media is liable solely because it and TVM are "substantially interrelated companies" that "acted in concert and as a joint enterprise." (Compl. ¶¶ 22-23.). While Defendants do not concede *any* relationship between the two entities, if they are sufficiently intertwined to be jointly liable, they are sufficiently intertwined for Interest Media to enforce TVM's arbitration clause.[1] *See, e.g.*, *Thomson-CSF, S.A. v Am. Arbitration Assn.*, 64 F3d 773, 777-778 [2d Cir 1995] (noting both agency and veil piercing/alter ego theories as a basis for enforcing an arbitration agreement against a nonsignatory).

Further, the Terms in effect when Plaintiff now claims he accessed the site include a "Modifications to the Agreement" section, which provides:

---

[1] In this regard, the Opposition argues that there is somehow an inconsistency because Defendants deny a joint enterprise in their motion to dismiss to defeat personal jurisdiction, yet simultaneously rely on their intertwined relationship to have Interest Media enforce TVM's arbitration clause. There is no inconsistency – if Plaintiff is correct that Interest Media is sufficiently related to exercise jurisdiction and impose liability, it is governed by the arbitration clause. If not, it is not subject to the jurisdiction of this Court in the first instance.

3

337237071v.3

> We reserve the right to make changes to these Terms, from time to time, in our sole discretion, by updating this posting on the Website without prior notice to you. Your continued use of the Website post the modification of the Terms constitutes your acceptance of such updated Terms. We encourage you to review the Terms whenever you visit the Website, to see if a new version has been posted.

Thus, by agreeing to the 2022 Terms, Plaintiff consented in advance to future modifications, including the 2026 amendments, if he continued to use the site—which he plainly did in connection with bringing this suit. Thus, though it does not matter given the 2022 agreement's broad arbitration provision, the 2026 agreement discussed in Defendants' opening Memorandum should govern this dispute regardless of when Plaintiff first accessed the site.

Regardless of which version of the Terms govern, the existence of a valid arbitration clause is not in dispute. As Plaintiff himself acknowledges, "[a]fter the moving party shows that 'an agreement to arbitrate existed,' 'the burden shifts to the party seeking to avoid arbitration to show the agreement to be inapplicable or invalid.'" (Opp., p. 5 (quoting *Zachman v. Hudson Valley Fed. Credit Union,* 49 F.4th 95, 102 (2d Cir. 2022)). Under New York law, a valid contract requires "a manifestation of mutual assent," *Starke v. SquareTrade, Inc*., 913 F.3d 279, 288-89 (2d Cir. 2019), and "actual notice of circumstances to put a prudent [person] upon inquiry," *Specht v. Netscape Commc'ns Corp.,* 306 F.3d 17, 30 n.14 (2d Cir. 2002). Here, Plaintiff does not and cannot dispute that he assented to the Terms when he clicked "continue" on TVM's website. The screenshot that Plaintiff himself provides plainly states that he "agree[s] to the Privacy Policy … and the Terms of Use[2] which includes a mandatory arbitration provision." (Kontas Decl., p. 4).[3] Plaintiff also

---

[2] The underlined phrases hyperlink to the full Privacy Policy and Terms of Use, which Plaintiff does not dispute.

[3] Whether purposeful or otherwise, the version of the screenshot included in the Opposition is both smaller and blurrier than the one included in Kontas' Declaration, both of which are smaller and blurrier than the actual website, even when rendered on a phone.

337237071v.3

does not deny that he had actual knowledge of those Terms. He simply argues (regardless of his knowledge) that the arbitration language was insufficiently "clear and conspicuous" to bind him.

While Plaintiff cites to *Soliman v. Subway Franchisee Advertising Fund Trust, Ltd.*, 999 F.3d 828 (2d Cir. 2021) in support of his argument, that case involved a consumer who merely viewed an advertisement without taking any affirmative action. Here, Plaintiff was required to click a "continue" button and enter his personal information to advance through the site. (Compl. ¶ 39). The Terms of Use were hyperlinked immediately adjacent to the "continue" button, notifying users that by proceeding they agreed to be bound. As the Second Circuit recognized in *Meyer v. Uber Technologies, Inc.*, 868 F.3d 66, 75–80 (2d Cir. 2017), a sign-up process requiring affirmative action while placing hyperlinked terms in close proximity provides reasonably conspicuous notice sufficient to bind the user to arbitration.[4]

Moreover, in assessing conspicuousness, courts typically consider the perspective of a reasonably prudent smartphone user. *See Schnabel v. Trilegiant Corp.*, 697 F.3d 110, 124 (2d Cir. 2012) ("[T]he touchstone of the analysis is whether reasonable people in the position of the parties would have known about the terms and the conduct that would be required to assent to them."). Additionally, the Second Circuit has noted that "when considering the perspective of a reasonable smartphone user, we need not presume that the user has never before encountered an app or entered into a contract using a smartphone," *Meyer*, 868 F.3d at 77, and that "a reasonably prudent smartphone user knows that text that is highlighted in blue and underlined is hyperlinked to another webpage where additional information will be found," *id.* at 78. Thus, Plaintiff plainly had adequate notice of the Terms.

---

[4] The Opposition's comparison table further implies that dark grey-on-white text is less conspicuous than the black-on-white text in *Soliman*, without explaining why that is the case. Regardless, font color is only one factor in the conspicuousness analysis and the decisive factor under *Meyer* is the proximity of the terms to the affirmative action button, not the color contrast.

5

337237071v.3

Moreover, Plaintiff cannot plausibly contend he was unaware of the Terms when his entire liability theory is predicated on a deliberate and detailed investigation of the website. As alleged in the Complaint, and confirmed in his declaration, Plaintiff—a self-described journalist employing "investigative techniques"—navigated through multiple pages, clicked "continue," and entered personal information. (Compl. ¶¶ 37-40; Kontas Decl. ¶¶ 9, 15.) Plaintiff cannot simultaneously disclaim knowledge of governing Terms while conceding deliberate investigation of the website for litigation purposes. *See Hines v. Overstock.com, Inc.*, 380 F. App'x 22 (2d Cir. 2010); *see also Druyan v. Jagger,* 508 F. Supp. 228, 237 (S.D.N.Y. 2007) (finding that use of a website for purchasing a ticket manifests assent to Terms of Use).

For these further reasons, there was a binding agreement to arbitrate and the Court must compel arbitration.

## II.    Plaintiff Lacks Article III Standing

In the event the Court declines to compel arbitration, Plaintiff's claims must be dismissed for lack of standing because Plaintiff concedes that he cannot connect a single phone number used to send the alleged text messages to either Defendant. Rather, the Opposition asks the Court to infer traceability from a convoluted chain of website redirects, citing only inapposite caselaw where the connection between the defendant and the call or text was direct and clear.[5]

In the *Digital Media Solutions*, *Senior Life Insurance*, and *Circle K Stores* matters, the text messages contained links *directly* to the defendant's website with no intervening third-party sites. *Bank v. Digital Media Solutions, Inc.,* No. 22-CV-293(EK)(LB), 2023 U.S. Dist. LEXIS 18696 (E.D.N.Y. Feb. 3, 2023) (four messages included links to websites owned by DMS), *Miholich v.*

---

[5] The traceability defect is even more pronounced with respect to Interest Media, which Plaintiff connects only through a privacy policy on a separate website—not even owned by Interest Media— and conclusory "joint enterprise" allegations. (Compl. ¶¶ 43-44).

*Senior Life Insurance Co.*, No. 21-cv-1123-WQH-AGS, 2022 U.S. Dist. LEXIS 23981 (S.D. Cal. Feb. 10, 2022) (messages advertised "Financial Leads" and contained a direct link to defendant's webinar), and *Abboud v. Circle K Stores Inc.*, 731 F. Supp. 3d 1094 (D. Ariz. 2024) (clicking links took recipient directly to defendant's website).   Similarly, in *GoHealth*, the plaintiff "'was subsequently transferred to a person who identified himself as an agent of [Defendant]' and … 'there was an automated message instructing him to call a phone number associated with [Defendant] if he wished to be placed on [Defendant's] do-not-call list.'"  *Bank v GoHealth*, No. 19-CV-5459, 2021 U.S. Dist. LEXIS 89871, at *6 (EDNY May 11, 2021).

Here, by contrast, the texts directed Plaintiff first to pendingprize.com (not owned by Defendants), then through imtrk.go2cloud.org (not owned by Defendants), and only thereafter to primerewardspot.com.   (Compl. ¶¶ 38-39).   This multi-step redirect chain is exactly the sort of speculative inference that fails to establish traceability.   *See, e.g., Bank v. Alarm.com Holdings, Inc.*, 828 F. App'x 5, 8 (2d Cir. 2020) ("Bank failed to allege that either Alliance or Alarm.com initiated the phone calls of which he complains, which is fatal to each of his claims."); *Cacho v. McCarthy & Kelly LLP*, 739 F. Supp. 3d 195, 214 (S.D.N.Y. 2024) (dismissing TCPA claims because "Defendant did not place those calls directly" and "Plaintiff's well-pleaded allegations do not plausibly suggest that the telemarketers who contacted Plaintiff were agents of Defendant acting with actual authority").[6]

---

[6] Plaintiff's attempt to recast his serial TCPA litigation history as merely the work of a journalist "exercising his rights" (Dkt. 23, pp. 11-13) does not refute Defendants' argument.  The Opposition does not dispute that Plaintiff's engagement with the links was deliberate, undertaken "for investigative purposes" approximately two months after receiving the last message, and that he filed prior TCPA lawsuits against different entities based on the same text messages before targeting Defendants.  (Compl. ¶¶ 37-40, 89.)  These facts demonstrate that Plaintiff's injuries are self-inflicted and manufactured for litigation.  *See Stoops v. Wells Fargo Bank, N.A.*, 197 F. Supp. 3d 782, 805 (W.D. Pa. 2016) (holding that a TCPA plaintiff with financial motives lacked both constitutional and prudential standing); *see also Dean v. Town of Hempstead*, 527 F. Supp. 3d 347, 403 (E.D.N.Y. 2021) ("[A] plaintiff may not establish injury for standing purposes based on a 'self-inflicted' injury."); *see also Bandler v. Town of Woodstock*, 832 F. App'x 733, 734 (2d Cir. 2020) ("to establish the traceability requirement of standing, a plaintiff must establish that the injury was not 'self-inflicted' or 'so completely due to the plaintiff's own fault as to break the causal chain'").  The cases

7

The Opposition also fails to even address redressability.[7]  Even if it did, because the actual sender of the texts is unknown and not before the Court, a judgment against Defendants would not prevent that unknown third party from continuing to send messages.  *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 569 (1992) (holding there is no redressability where the bad actors "were not parties to the suit, and there is no reason they should be obliged to honor an incidental legal determination the suit produced"); *Simon v. Eastern Ky. Welfare Rights Organization*, 426 U.S. 26, 41-42 (1976) ("Art. III still requires that a federal court act only to redress injury that fairly can be traced to the challenged action of the defendant, and not injury that results from the independent action of some third party not before the court.").  This provides an independent basis for dismissal of Plaintiff's claims.

For these further reasons, Plaintiff lacks standing to assert claims against Defendants TVM and Interest Media.

## III.    The Court Lacks Personal Jurisdiction Over Interest Media

The Opposition attempts to establish personal jurisdiction over Interest Media solely by relying on the wildly inapposite case *Fox Corp. v. Media Deportes Mexico*, 801 F. Supp. 3d 217 (S.D.N.Y. 2025).  (Dkt. 23, pp. 17-19).  *Fox Corp.* involved two indirect subsidiaries of the same parent company that were engaged in a joint venture, shared common leadership, filed joint pleadings in other litigation, authored joint press statements, and did not assert independent legal

---

cited by Plaintiff in opposition to this point, each of which involved plaintiffs who merely answered or responded to a single call, are inapposite where, as here, Plaintiff undertook a months-long, multi-step investigative campaign across multiple websites specifically to build a lawsuit.

[7] *See, e.g., Louie's Seafood Rest., LLC v Brown*, 199 A.D.3d 790, 793 (2d Dep't 2021) ("The plaintiffs have abandoned their breach of contract cause of action as pleaded in the complaint by failing to address those allegations in opposition to the motion to dismiss[.]"); *Martinez v 1380 Hous. Dev. Fund Corp.,* 2024 NY Slip Op 30805[U], *5 [Sup Ct, NY County 2024] ("a plaintiff abandons a claim by failing to address in its opposition papers the defendant's arguments in support of its motion seeking dismissal of that claim"); *Hood v Westchester County Healthcare Corp.,* 2022 N.Y. Misc. LEXIS 48545, at *5 [Sup Ct, Westchester County Apr. 5, 2022] ("An opponent's failure to oppose an argument raised on a motion to dismiss constitutes a waiver of opposition.").

interests.[8]  *Id.* at 227.  Here, the Complaint alleges only that TVM and Interest Media "share multiple mailing and office addresses, as well as multiple corporate officers."  (Compl. ¶ 22).  Plaintiff's Opposition adds only a 2025 Missouri Secretary of State filing showing Jeremy Hoggatt as president of Interest Media.  (Kontas Decl. Ex. A).  As established in Defendants' opening Memorandum, shared officers and overlapping addresses, standing alone, do not establish a joint enterprise.[9]  Rather, Plaintiff must establish, or at least plausibly allege, the elements of joint control, shared profits and losses, or an agreement to carry on a common enterprise.[10]  He has not and cannot do so here.

Plaintiff's Opposition attempts to cure this obvious pleading defect by asserting that "[a]fter clicking the links from the subject text messages, and then clicking on the 'lucky number' on the webpage to which the link led Kontas's web-browser, the browser was directed to a tracking page go2cloud.org- which is owned by the parent company of Interest Media- before being directed to the primerewardspot website operated by TVM." (Opp., p. 18).  Although it is factually inaccurate—go2cloud.org is not owned by "the parent company of Interest Media"—Plaintiff's

---

[8] In a footnote, Plaintiff's Opposition attempts to make a point that TVM and Interest Media have hired a single law firm and rely on the same affiant, attempting to draw a parallel to the *Fox Corp.* factors.  However, the joint representation of two entities in a single lawsuit is routine litigation efficiency and carries no jurisdictional significance—it is no different than if two individuals are represented by the same firm.  In contrast, in *Fox Corp.* the joint pleadings that were filed in *separate* proceedings in Mexico evidenced that the two entities were tightly intertwined.  As for the Declaration of Jeremy Matthew Hoggatt, it is expressly made solely in his capacity as "Chief Executive Officer of Third Victory Media, LLC."

[9] *See Parsons v. Kal Kan Food, Inc.*, 68 A.D.3d 1501, 1503 (3d Dept 2009) (no personal jurisdiction over a company even where it "shares an address and phone number with defendant, uses the same Web site and promotional brochure, and the same individuals are officers and directors of both corporations"); *McAnaney v. Astoria Fin. Corp.*, 665 F. Supp. 2d 132, 144 (E.D.N.Y. 2009) ("evidence that the bank holding company defendants and their subsidiaries shared common officers and directors…, without more… is insufficient as a matter of law to establish alter ego liability of a parent corporation"); *De Jesus v. Sears, Roebuck & Co.*, 87 F.3d 65, 70 (2d Cir. 1996) ("To overcome 'the presumption of separateness afforded to related corporations,' Plaintiffs must come forward with 'the showing of actual domination required to pierce the corporate veil.'").

[10] *See, e.g., ITEL Containers Int'l Corp. v. Atlanttrafik Express Serv., Ltd.*, 909 F.2d 698, 701 (2d Cir. 1990) (requiring plaintiff to plead "(1) two or more persons must enter into a specific agreement to carry on an enterprise for profit; (2) their agreement must evidence their intent to be joint venturers; (3) each must make a contribution of property, financing, skill, knowledge, or effort; (4) each must have some degree of joint control over the venture; and (5) there must be a provision for the sharing of both profits and losses").

9

argument ultimately concedes that Interest Media has no direct connection to the subject texts, to any website in the chain of links Plaintiff purportedly followed, or the PrimeRewardSpot website.[11]

Accordingly, Plaintiff has not made anything close to the prima facie showing of jurisdiction necessary to be entitled to jurisdictional discovery. *See RSM Prod. Corp. v. Fridman*, 643 F. Supp. 2d 382, 401 (S.D.N.Y. 2009) ("[I]f the plaintiff has failed to establish a prima facie case for personal jurisdiction, jurisdictional discovery is generally not granted…discovery need not be granted to allow plaintiff to engage in an unfounded fishing expedition for jurisdictional facts."). Mere speculation that discovery might uncover contacts is insufficient. Interest Media is a Delaware corporation headquartered in Missouri with no office, employees, physical presence, contracts, or direct business transactions in New York. *See Walden v. Fiore*, 571 U.S. 277, 284 (2014) ("the relationship must arise out of contacts that the 'defendant himself' creates with the forum State"). Accordingly it has no contacts with the forum that would confer personal jurisdiction.[12]

For these further reasons, this Court lacks personal jurisdiction over Defendant Interest Media.

---

[11] Indeed, the very next sentence in Plaintiff's Opposition states that "[b]ecause both Defendants' websites were featured in the chain generated from the text messages and the companies are owned and operated by the same people, Plaintiff understands and alleges the text messages were made by or on behalf of Defendants as a joint enterprise." (Opp., p. 18). Thus, Plaintiff apparently concedes that, if Interest Media's website was not "in the chain generated from the text messages" (which the preceding sentence admits), the Plaintiff would have no reason to believe that the text messages "were made by or on behalf of Defendants as a joint enterprise."

[12] Plaintiff cites *Carrodine v. Flatiron Media* (S.D.N.Y. 2023) for the proposition that at the pleading stage, courts afford latitude "where the facts are peculiarly within the possession and control of the defendant." However, *Carrodine* involved factual allegations of culpability, not the bootstrapping of jurisdictional contacts from one entity to another, which due process prohibits.

10

337237071v.3

## IV.    The Complaint Fails to State a Claim Under Rule 12(b)(6)

Even assuming standing and personal jurisdiction, the Complaint fails to state a claim upon which relief may be granted because the at-issue text messages are not "telephone solicitations" and the Complaint does not adequately allege that defendants initiated the text messages.

Although Plaintiff's Opposition relies on *Chesbro v. Best Buy Stores, L.P.*, 705 F.3d 913 (9th Cir. 2012), and *Abboud v. Circle K Stores Inc.*, 731 F. Supp. 3d 1094 (D. Ariz. 2024) for the proposition that the text messages qualify as "solicitations" (Dkt. 23, pp. 20-21), neither is applicable.  As Plaintiff himself notes, in *Chesbro*, the calls directly "encourage[d] the plaintiff to spend reward points at the defendant's stores."  (Opp., p. 20).[13]  Similarly, in *Abboud*, the text messages specifically encouraged the recipient sign-up for shopping offers and included a direct link to the defendant's website.[14]  Thus, in both cases there was clearly a solicitation to purchase something.

Here, Plaintiff's own class definition describes the messages as "advertising sweepstakes or rewards," not solicitations of any commercial products or services. (Compl. ¶ 60). Accordingly, the texts did not encourage the "purchase or rental of, or investment in, property, goods, or services," as required by 47 U.S.C. § 227(a)(4).  *See Gerrard v. Acara Solutions, Inc.*, 469 F. Supp. 3d 96, 99 (W.D.N.Y. 2020) ("Because the text messages identified in the Complaint are neither advertisements nor telemarketing, [plaintiff] fails to state a claim under the TCPA."); *Katz v. Focus Forward, LLC*, 22 F.4th 368, 372 (2d Cir. 2022) (where faxes that "seek a recipient's participation

---

[13] *See also Chesbro,* 705 F3d at 918 ("the calls encouraged the listener to make future purchases at Best Buy").

[14] *Abboud*, 731 F Supp 3d at 1103 ("the texts 'advise[d] Plaintiff to reply "YES" to sign up to "receive special offers" and to "get offers" from Defendant' …, the second and third messages included a link to Defendant's website").

337237071v.3

in a survey plainly do not advertise the availability of any one kind of those three things" cannot be advertisements under the TCPA).[15]

Moreover, even assuming the messages could qualify as solicitations, the Complaint fails to allege that either Defendant initiated or directed anyone to send them. The only connection is a chain of website redirects establishing, at most, that TVM operates a website to which traffic was indirectly routed from external sources it did not control. (Compl. ¶¶ 38-39.) *See Bank v. Alarm.com Holdings, Inc.*, 828 F. App'x 5, 8 (2d Cir. 2020) (dismissing TCPA claim because plaintiff "failed to allege any facts permitting an inference that either [of the defendants] initiated the phone calls of which he complains"); *Bank v. Spark Energy, LLC*, 860 F. App'x 205, 206 (2d Cir. 2021) ("The District Court properly dismissed [plaintiff's] TCPA claim because the complaint does not adequately plead that [defendant] was responsible for the alleged calls."); *Cacho*, 739 F. Supp. 3d at 218 ("The Court need go no further than to observe that Plaintiff's Complaint is bereft of any allegation from which one could reasonably infer that Defendant knew or should have known that the telemarketers were violating the TCPA and its implementing regulations.").

For these further reasons, Plaintiff's Complaint must be dismissed, in its entirety and with prejudice, pursuant to Federal Rule of Civil Procedure 12(b)(6).[16]

---

[15] The Opposition argues that the texts' purpose of harvesting consumer data for marketing partners is itself a solicitation objective. However, *Katz* rebuts this theory, holding that surveys which do not advertise goods or services are not solicitations.

[16] In addition to the foregoing, Plaintiff's Opposition devotes considerable space to arguing that Plaintiff has adequately alleged that he is a "residential subscriber," within the purview of 47 U.S.C. § 227(c). However, as Defendants acknowledged in their opening memorandum, one court in this district has held that cellular telephone users qualify as "residential subscribers." Defendants nonetheless continue to believe that the later case law cited in their opening memorandum, including *Gaker v Q3M Ins. Solutions,* No. 3:22-CV-00296-RJC-DSC, 2023 U.S. Dist. LEXIS 44919, at *7-8 (W.D.N.C. Feb. 7, 2023); *Shelton v. Fast Advance Funding, LLC,* 378 F. Supp. 3d 356, 362 n.7 (E.D. Pa. 2019) ; *Cunningham v Sunshine Consulting Group, LLC,* No. 3:16-2921, 2018 U.S. Dist. LEXIS 121709, at *16 (M.D. Tenn. July 20, 2018), is better reasoned, particularly in light of the Supreme Court's rejection of agency deference in *Loper Bright Enterprises v. Raimondo*, 603 U.S. 369, 412 (2024) ("Courts must exercise their independent judgment in deciding whether an agency has acted within its statutory authority."). The statutory text of 47 U.S.C. § 227(c) protects "residential telephone subscribers," a term that, by its plain meaning, refers to fixed-line residential telephones, not mobile devices that can be used anywhere.

12

337237071v.3

**IV.    Plaintiff's Request for Leave to Amend Should Be Denied.**

Perhaps recognizing the deficiencies in his complaint, Plaintiff's Opposition requests leave to file a First Amended Complaint if the Court finds the Complaint insufficient.  (Dkt. 23, p. 25).  However, while such leave is often afforded, it should be denied here because amendment would be futile.  *See Wood ex rel. United States v. Applied Research Assoc,* 328 F. App'x 744, 750 (2d Cir. 2009) ("leave to amend may be denied … if an amendment would be futile).  Plaintiff filed this action more than three years after the alleged text messages and has had ample time and opportunity to plead his best case.  Plaintiff does not now argue that he failed to do so, and does not offer any explanation why he thinks another attempt to plead would improve his claims.  *See, e.g., Wyo. State Treas. v. Moody's Invs. Serv. (In re Lehman Bros. Mtge.-Backed Sec. Litig.)*, 650 F.3d 167, 188 (2d Cir. 2011) (leave to amend properly denied where plaintiffs failed "to identify new facts that might redress the complaints' noted deficiencies").  Indeed, by submitting a Declaration with his Opposition, Plaintiff has already attempted to introduce all of the new facts he could muster and still cannot stave off dismissal.  Accordingly, permitting Plaintiff to amend his substantive claims would serve no purpose.

Moreover, Plaintiff's lack of Article III standing also cannot be cured by any amendment.  Plaintiff's failure to adequately allege traceability and redressability reflects the fundamental absence of any non-speculative connection between Defendants and the subject text messages.  Personal jurisdiction over Interest Media also cannot be established through repleading because no amount of pleading can manufacture contacts that do not exist.  Further, and regardless, this matter must be referred to arbitration, and therefore any amendment would serve no practical purpose in this forum—whatever Plaintiff might plead, those claims must proceed in arbitration, not in this Court.

13

## CONCLUSION

For the reasons set forth in Defendants' opening Memorandum and discussed further herein, the Court should stay these proceedings and compel arbitration under the Federal Arbitration Act, 9 U.S.C. § 2.  In the alternative, the Court should dismiss Plaintiff's Complaint, in its entirety and with prejudice, pursuant to Federal Rules of Civil Procedure 12(b)(1), 12(b)(2), and 12(b)(6).

Dated:  New York, New York
          June 10, 2026

Respectfully submitted:

**WILSON, ELSER, MOSKOWITZ,**
**EDELMAN & DICKER, LLP**

*/s/ Richard W. Boone Jr.*

Richard W. Boone Jr.
Kieran R. Lang
150 East 42nd Street
New York, NY 10017
Telephone: (212) 490-3000
Fax: (212) 490-3038
E-mail: richard.boone@wilsonelser.com
E-mail: kieran.lang@wilsonelser.com

*Attorneys for Defendants Third Victory*
*Media, LLC and Interest Media, Inc.*

14

337237071v.3

## CERTIFICATION OF COUNSEL

I, Richard W. Boone Jr., the attorney for Defendants Third Victory Media, LLC and Interest Media, Inc., hereby certify that this **REPLY MEMORANDUM OF LAW** is in compliance with Local Civil Rule 7.1(c).  The **REPLY MEMORANDUM OF LAW** was prepared using Microsoft Word.  The typeface is Times New Roman.  The main body of the **REPLY MEMORANDUM OF LAW** is in 12-point font with 1-inch margins throughout, and contains 3,441 words, as counted by the word-processing program.

By:      /s/ Richard W. Boone Jr.

*Counsel for Defendants Third Victory Media, LLC and Interest Media, Inc.*

15

337237071v.3

## CERTIFICATE OF SERVICE

I hereby certify that on June 10, 2026, I electronically mailed the foregoing document to plaintiff in accordance with the Judge's Order dated April 23, 2026.

 /s/ Richard W. Boone Jr.

*Counsel for Defendants Third Victory Media, LLC and Interest Media, Inc.*

16

337237071v.3