**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **RICHARD KONTAS,** *individually and on behalf of all others similarly situated*<br><br>          Plaintiff,<br><br>   vs.<br><br>**THIRD VICTORY MEDIA, LLC and INTEREST MEDIA, INC.,**<br><br>          Defendants. | Case No. 7:25-cv-10227-PMH<br><br>Hon. Philip M. Halpern |

# PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTION TO COMPEL ARBITRATION AND/OR DISMISS

KIMMEL & SILVERMAN, P.C.

Jacob U. Ginsburg, Esq. (phv)
Craig T. Kimmel
30 East Butler Ave.
Ambler, PA 19002
Phone: (267) 468-5374
Facsimile: (877) 788-2864
Email: jginsburg@creditlaw.com
       teamkimmel@creditlaw.com

Dated: May 27, 2026

# TABLE OF CONTENTS

| I. | INTRODUCTION AND SUMMARY OF ARGUMENT | 1 |
|---|---|---|
| II. | FACTUAL BACKGROUND | 2 |
| III. | DEFENDANTS' MOTION TO COMPEL ARBITRATION FAILS | 4 |
| | A. Standard for a Motion to Compel Arbitration. | 4 |
| | B. TVM Has Failed to Meet its Burden to Compel Arbitration. | 5 |
| | C. Interest Failed to Meet its Burden to Compel Arbitration. | 8 |
| IV. | KONTAS HAS ARTICLE III STANDING. | 9 |
| V. | THIS COURT HAS PERSONAL JURISDICTION OVER INTEREST MEDIA. | 16 |
| | A. Standard for a Motion to Dismiss for Lack of Personal Jurisdiction | 16 |
| | B. This Court has Personal Jurisdiction Over Interest Media. | 17 |
| | C. If the Court Finds an Insufficient Basis to Exercise Jurisdiction Over Interest Media, | |
| | D. Plaintiff Seeks Leave to Conduct 60 Days of Jurisdictional Discovery. | 19 |
| VI. | THE COMPLAINT STATES A CLAIM UPON WHICH RELIEF CAN BE GRANTED | 19 |
| | A. Standard for motion to dismiss under Fed. R. Civ. P. 12(b)(6). | 19 |
| | B. The Text Messages Were "Solicitations". | 20 |
| | C. Plaintiff is a residential subscriber. | 21 |
| | D. In the Alternative, Plaintiff Seeks Leave to Amend. | 25 |
| VII. | CONCLUSION | 25 |

# TABLE OF AUTHORITIES

## CASES

|  | Page(s) |
|---|---|
| *Abboud v. Circle K Stores Inc.*, 731 F. Supp. 3d 1094 (D. Ariz. Apr. 24, 2024) | 14, 20 |
| *Ajinomoto Co. v. CJ Cheiljedang Corp.*, No. 1:16-cv-03498 (MKV), 2021 U.S. Dist. LEXIS 184945 (S.D.N.Y. Sep. 27, 2021) | 17 |
| *Arista Records LLC v. Doe 3*, 604 F.3d 110 (2d Cir. 2010) | 17 |
| *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) | 19 |
| *Atkinson v. Choice Home Warranty*, 2023 U.S. Dist. LEXIS 5570 (D.N.J. 2023) | 23 |
| *Ball v. Metallurgie Hoboken-Overpelt*, S.A., 902 F.2d 194 (2d Cir. 1990) | 16 |
| *Bank v. Digit. Media Sols.*, Inc., No. 22-CV-293(EK)(LB), 2023 U.S. Dist. LEXIS 18696 (E.D.N.Y. Feb. 3, 2023) | 15 |
| *Bank v. Gohealth*, No. 19-CV-5459 (MKB)(CLP), 2021 U.S. Dist. LEXIS 89871 (E.D.N.Y. May 11, 2021) | 15 |
| *Barr v. Am. Ass'n of Political Consultants*, 140 S. Ct. 2335 (2020) | 15 |
| *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) | 19 |
| *Blalack v. RentBeforeOwning.com*, No. CV21-09048-JAK, 2022 WL 7320045 (C.D. Cal. Oct. 11, 2022) | 20 |
| *Carrodine v. Flatiron Media*, LLC, No. 22-CV-9660 (JMF), 2023 U.S. Dist. LEXIS 210182 (S.D.N.Y. Nov. 27, 2023) | 19 |
| *Champion v. Credit Pros Int'l Corp.*, 2023 U.S. Dist. LEXIS 84427 (D.N.J. May 15, 2023) | 18 |
| *Chennette v. Porch.com*, Inc., 50 F.4th 1217 (9th Cir. 2022) | 23 |
| *Chesbro v. Best Buy Stores*, L.P., 705 F.3d 913 (9th Cir. 2012) | 22 |
| *Chevron Corp. v. Donziger*, 833 F.3d 74 (2d Cir. 2016) | 14 |
| *Clemons v. Bradford O'Neil Agency*, LLC, No. 21-CV-00678-SRC, 2021 WL 6062491 (E.D. Mo. Dec. 22, 2021) | 23 |
| *Clough v. Frontier Revenue*, 2019 U.S. Dist. LEXIS 102436 (D.N.H. 2019) | 14 |
| *Cunningham v. Rapid Response Monitoring Servs.*, 251 F. Supp. 3d 1187 (M.D. Tenn. 2017) | 12 |
| *CutCo Indus.*, *Inc. v. Naughton,* 806 F.2d 361 (2d Cir. 1986) | 17 |
| *Dorchester Fin. Sec.*, *Inc. v. Banco BRJ, S.A.*, 722 F.3d 81 (2d Cir. 2013) | 16 |
| *Dudley v. Vision Solar*, LLC, 2021 WL 3077557 (E.D. Pa. July 21, 2021) | 24 |
| *Edmar Fin. Co.*, *LLC v. Currenex, Inc.*, No. 21-cv-6598 (LAK), 2024 U.S. Dist. LEXIS 107213 (S.D.N.Y. June 17, 2024) | 16 |

*Ewing v. CSOLAR*, No. 22-CV-0720-WQH, 2022 WL 4449326 (S.D. Cal. Sept. 22, 2022) .......... 23

*Fox Corp. v. Media Deportes Mexico*, 801 F. Supp. 3d 217 (S.D.N.Y. 2025) .......... 17, 18

*Gaker v. Q3M Ins. Sols.*, 2023 WL 2472649 (W.D.N.C. Feb. 7, 2023) .......... 18

*Gill v. Align Tech.*, No. 21-CV-631-JPS, 2022 WL 1540016 (E.D. Wis. May 16, 2022) .......... 23

*Goonan v. Fed. Rsrv. Bank of N.Y.*, 916 F. Supp. 2d 470 (S.D.N.Y. 2013) .......... 20

*Hall v. Smosh Dot Com*, Inc., 72 F.4th 983 (9th Cir. 2023) .......... 12

*Hodgin v. Parker Waichman LLP*, No. 14-CV-733-DJH, 2015 WL 13022289 (W.D. Ky. Sept. 30, 2015) .......... 23

*Lenorowitz v. Mosquito Squad of Fairfield & Westchester Cty.*, No. 3:20-cv-01922 (JBA), 2023 U.S. Dist. LEXIS 50160 (D. Conn. Mar. 23, 2023) .......... 23

*Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992) .......... 14

*Mantha v. Quotewizard.com*, LLC, No. 19-12235-LTS, 2022 WL 325722 (D. Mass. Feb. 3, 2022) .......... 23

*Marks v. Unique Lifestyle Vacations*, LLC, No. 20-4915-KSM, 2021 WL 5495778 (E.D. Pa. Nov. 22, 2021) .......... 24

*McDermet v. DirecTV*, LLC, No. 19-11322-FDS, 2021 WL 217336 (D. Mass. Jan. 21, 2021) .......... 23

*Mejia v. Time Warner Cable*, Inc., No. 15-CV-6445 (JPO), 2017 U.S. Dist. LEXIS 120445 (S.D.N.Y. Aug. 1, 2017) .......... 22

*Melito v. Experian Mktg. Sols.*, Inc., 923 F.3d 85 (2d Cir. 2019) .......... 11

*Mestas v. CHW Grp. Inc.*, 508 F. Supp. 3d 1011 (D.N.M. 2020) .......... 23

*Mey v. Venture Data*, LLC, 245 F. Supp. 3d 771 (N.D.W. Va. 2017) .......... 12

*Meyer v. Uber Techs*, Inc., 868 F.3d 66 (2d Cir. 2017) .......... 4, 5

*Miholich v. Senior Life Ins. Co.*, No. 21-cv-1123-WQH-AGS, 2022 U.S. Dist. LEXIS 23981 (S.D. Cal. Feb. 10, 2022) .......... 10, 15, 23

*Nicosia v. Amazon.com*, Inc., 834 F.3d 220 (2d Cir. 2016) .......... 6

*Noviello v. Holloway Funding Grp.*, 2023 U.S. Dist. LEXIS 30591 (N.D. Tex. Feb. 23, 2023) .......... 11, 23

*Perrong v. Total Ins. Brokers*, LLC, No. 20-1905, 2021 WL 3036467 (M.D. Fla. Apr. 2, 2021) .......... 12

*Perrong v. Victory Phones LLC*, No. 20-5317, 2021 U.S. Dist. LEXIS 132404 (E.D. Pa. July 15, 2021) .......... 13

*Rose v. New TSI Holdings*, Inc., No. 21-CV-5519-JPO, 2022 WL 912967 (S.D.N.Y. Mar. 28, 2022) .......... 23

*Rothstein v. UBS AG*, 708 F.3d 82 (2d Cir. 2013) .......... 14

*Shelton v. Fast Advance Funding*, LLC, 378 F. Supp. 3d 356 (E.D. Pa. 2019) .......... 14, 24

*Shelton v. Fast Advance Funding*, LLC, 805 Fed. App'x 156 (3d Cir. 2020) .......... 24

*Soliman v. Subway Franchisee Advert. Fund Tr.*, Ltd., 999 F.3d 828 (2d Cir. 2021) 5, 6, 7

*Specht v. Netscape Commc'ns Corp.*, 306 F.3d 17 (2d Cir. 2002) 6

*Spurlark v. Dimension Serv. Corp.*, 2022 U.S. Dist. LEXIS 120468 (S.D. Ohio July 7, 2022) 13, 23

*Starke v. SquareTrade*, Inc., 913 F.3d 279 (2d Cir. 2019) 5, 6

*Stoops v. Wells Fargo Bank*, N.A., 197 F. Supp. 3d 782 (W.D. Pa. 2016) 10

*Strange v. ABC Co.*, 2021 WL 798870 (W.D. La. Mar. 1, 2021) 23

*Susinno v. Work Out World Inc.*, 862 F.3d 346 (3d Cir. 2017) 10

*Teta v. Go New York Tours*, Inc., 738 F. Supp. 3d 502 (S.D.N.Y. July 1, 2024) 10

*United States v. Burkholder*, 816 F.3d 607 (10th Cir. 2016) 22

*Valdes v. Century 21 Real Est.*, LLC, No. 2:19-05411, 2019 WL 5388162 (D.N.J. Oct. 22, 2019) 23

*Wachovia Bank*, Nat'l Ass'n v. VCG Special Opportunities Master Fund, 661 F.3d 164 (2d Cir. 2011) 5

*Wilson v. Easy Spirit*, LLC, No. 3:25-CV-112 (SFR), 2026 U.S. Dist. LEXIS 69059 (D. Conn. Mar. 31, 2026) 22

*Zachman v. Hudson Valley Fed. Credit Union*, 49 F.4th 95 (2d Cir. 2022) 4-5

*Zani v. Rite Aid Headquarters Corp.*, 246 F. Supp. 3d 835 (S.D.N.Y. 2017) 11

## <u>STATUTES AND RULES</u>

| | Page(s) |
| --- | --- |
| 47 U.S.C. § 227 | *passim* |
| Fed. R. Civ. P. 12 | *passim* |

AND NOW, Plaintiff Richard Kontas ("Plaintiff" or "Kontas") hereby responds to the motion to compel arbitration and/or dismiss filed by Defendant Third Victory Media, LLC ("TVM") and Interest Media, LLC ("Interest Media" and with TVM "Defendants").

## I.    INTRODUCTION AND SUMMARY OF ARGUMENT

Plaintiff Richard Kontas, a retired journalist whose phone number has been registered on the National Do Not Call Registry since 2008, received seven unsolicited text messages between October and November 2022 soliciting "rewards" and "sweepstakes." Each message contained a link that ultimately directed to websites owned and operated by Defendants TVM and Interest. Defendants now move to compel arbitration, or alternatively to dismiss for lack of standing, lack of personal jurisdiction over Interest Media, and failure to state a claim. Each argument fails.

First, Defendants cannot compel arbitration. TVM's motion rests on a "Terms of Use" bearing an effective date of February 5, 2026 — almost four years after the  alleged December 2022 web submission it relies upon. Moreover, the 2022 version of the primerewardspot.com website, as it actually appeared on Kontas's iPhone, buried any purported arbitration language in grey fine print below the "continue" button, wholly invisible on the initial screen. Under Second Circuit precedent, such a disclosure is insufficiently "clear and conspicuous" to bind Kontas to arbitration. Interest Media's motion independently fails because its affiant offers only a conclusory assertion that it qualifies as a "Covered Party" under TVM's alleged agreement, without identifying any actual relationship or providing supporting evidence. To compel arbitration with such conclusory statements would be drawing inferences in favor of the moving party against the non-movant- turning the pleadings standards on its head.

Second, Kontas has Article III standing. He suffered precisely the concrete injury the TCPA was enacted to prevent— irritation and disruption from the receipt of seven unwanted,

irritating text messages on a number registered on the Do Not Call Registry. Kontas plausibly alleges that those messages are traceable to Defendants, whose websites were featured at every step in the link chain generated by those texts. Third, this Court has personal jurisdiction over Interest Media. TVM and Interest Media share common corporate officersand intertwined business operations, and jointly participated in the text message campaign at issue — establishing a joint enterprise sufficient for jurisdiction.

Finally, the Complaint states a valid TCPA claim. The text messages were "solicitations" within the meaning of the statute. Further, Kontas — as a cell phone user registered on the National Do Not Call Registry — is a "residential subscriber" protected by the TCPA's do-not-call provisions. While Defendants contend the Do-Not-Call Registry does not apply to cell phones, that position is inconsistent with the statutory language of 47 U.S.C. § 227(c), the actions and manifested intent of Congress, the FCC regulations promulgated pursuant to the agency's legislative mandate, and the overwhelming weight of authority- including all cases from the Second Circuit. For these reasons set forth at length below, Defendants' motion should be denied in its entirety.

## II.    FACTUAL BACKGROUND

Plaintiff Richard Kontas is a 69-year-old resident of Burbank, California, who holds a bachelor's degree in journalism and a master's degree in mass communications. Decl. ¶¶ 1, 6. He is retired and receives Social Security benefits. Decl. ¶ 7. Kontas is the owner and primary user of the cell phone number 818-████-2182, which he has maintained since approximately 2007 and uses primarily for personal and residential purposes, including communicating with friends and family. Decl. ¶¶ 3–4; Compl. ¶¶ 25, 27. On February 10, 2008, Kontas registered that number on

the National Do Not Call Registry in order to avoid unwanted telemarketing calls and spam text messages. Decl. ¶ 5; Compl. ¶ 26.

Between October and November 2022, Kontas received the following seven unsolicited text messages from Defendants or someone acting on their behalf:

| Date | Time | Number |
|---|---|---|
| 10/26/22 | 8:01 AM | 305-713-5323 |
| 10/26/22 | 1:45 PM | 818-612-4432 |
| 10/27/22 | 10:00 AM | 405-548-7825 |
| 11/11/22 | 9:37 AM | 650-609-1220 |
| 11/20/22 | 12:54 PM | 602-816-3283 |
| 11/21/22 | 9:26 AM | 772-899-5805 |
| 11/26/22 | 2:25 PM | 650-935-1788 |

Decl. ¶ 11; Compl. ¶ 31. Each of these texts solicited "rewards" and/or "sweepstakes" and contained a link, but none identified the sender or the entity on whose behalf the messages were sent. Decl. ¶¶ 12–13; Compl. ¶¶ 29, 32. Kontas had not signed up to receive any such messages, had no pre-existing business relationship with Defendants, and had not provided his prior express consent to be contacted for solicitation purposes. Decl. ¶ 13; Compl. ¶¶ 33–34. He found the messages irritating and disruptive. Decl. ¶ 14; Compl. ¶ 36.

On December 29, 2022, after having received all seven messages, Kontas — drawing on investigative techniques he developed as a journalist — clicked the link in each text to identify the sender. Decl. ¶¶ 9, 15; Compl. ¶ 37. Each link resolved to a page on pendingprize.com, which displayed a purported "lucky number" and invited Kontas to click to supposedly win a Visa gift card. Decl. ¶ 16; Compl. ¶ 38. Clicking the lucky number then directed Kontas to a tracking page at imtrk.go2cloud.org, which prompted him to click "continue." Decl. ¶ 17; Compl. ¶ 39. After clicking continue, his browser resolved to primerewardspot.com, a site that asked him to submit his email address. Decl. ¶ 18; Compl. ¶ 39. The email submission form contained fine print

3

disclosures, but those disclosures were only visible if the user scrolled below the "continue" button — they were not visible on the initial screen as rendered on an iPhone. Decl. ¶ 18. For investigative purposes only and *after* all seven unsolicited text messages were sent to his number, Kontas entered a fictitious email address to advance through the site and complete his investigation as to the source of the spam text messages. Decl. ¶ 19.

"PrimeRewardSpot" is an assumed name registered with the New York Secretary of State to Defendant TVM which owns and operates primerewardspot.com. Decl. ¶ 21; Compl. ¶ 42. The domain go2cloud.org is owned by TUNE, Inc., which also owns hasoffers.com. Decl. ¶ 22; Compl. ¶ 43. A privacy policy displayed on hasoffers.com discloses that the site is owned or operated by Defendant Interest Media. Decl. ¶ 23; Compl. ¶ 44. Public filings further reveal that TVM and Interest Media share common corporate officers, including Jeremy Matthew Hogatt, Kent Freeburg, and Mike Stephens. Decl. ¶ 24; Ex. A to Decl.; Compl. ¶ 22. Because all seven text messages directed traffic to primerewardspot.com and imtrk.go2cloud.org, Kontas alleges that Defendants, or their agents acting on their behalf, were responsible for sending the messages. Decl. ¶ 25; Compl. ¶ 45.

## III.    DEFENDANTS' MOTION TO COMPEL ARBITRATION FAILS

### A.  Standard for a Motion to Compel Arbitration.

The standard of review for a motion to compel arbitration is "similar to that applicable for a motion for summary judgment." *Zachman v. Hudson Valley Fed. Credit Union*, 49 F.4th 95, 101 (2d Cir. 2022). As with a motion for summary judgment, the Court "considers all relevant, admissible evidence submitted by the parties and contained in pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, and draws all reasonable inferences in favor of the non-moving party." *Meyer v. Uber Techs, Inc.*, 868 F.3d 66, 74 (2d Cir.

4

2017). If the undisputed factual record supports a legal determination as to arbitrability, the Court "may rule on the basis of that legal issue and avoid the need for further court proceedings." *Wachovia Bank, Nat'l Ass'n v. VCG Special Opportunities Master Fund*, 661 F.3d 164, 172 (2d Cir. 2011). However, "the FAA is not a substitute for contractual assent, and the court will not enforce arbitration unless and until it is determined that an agreement exists." *Soliman v. Subway Franchisee Advert. Fund Tr., Ltd.*, 999 F.3d 828, 830 (2d Cir. 2021) After the moving party shows that "an agreement to arbitrate existed," "the burden shifts to the party seeking to avoid arbitration to show the agreement to be inapplicable or invalid." *Zachman*, 49 F.4th at 102.

### B. TVM Has Failed to Meet its Burden to Compel Arbitration.

Here, Interest and TVM fail to demonstrate any enforceable agreement to arbitrate was entered into between Kontas and either of Defendants- let alone both of them. Specifically, while attempting to enforce a supposed contract from 2022, Defendants cite to the "Terms of Use" attached to Jeremy Hoggatt's Declaration, in which the first words read "**Effective Date: February 5th, 2026**." (*See* Ex. A to Hoggart Decl., p. 1.) Defendants' decision to sneak a 2026 website into a motion based on a supposed 2022 contract was not only insulting to Plaintiff and his counsel, but highly insulting to the Court.

Critically, the primerewardspot.com website did not appear as Defendants suggest in Hoggart's declaration, as Hoggart attached an image from the 2026 version of the webpage, rather than that from 2022. *See* Ex. A to Hoggart Decl, p. 1. The webpage with the arbitration language, as it existed in 2022 (when Kontas engaged with the page) appeared as follows, with the page as appeared on Kontas's iPhone after landing on the page on the left, and after scrolling all the way down, to the right:

5



Whether an agreement to arbitrate exists is determined by state contract law. *Teta v. Go New York Tours, Inc.*, 738 F. Supp. 3d 502, No. 24-cv-01614, 2024 U.S. Dist. LEXIS 115643, 2024 WL 3252907, at *3 (S.D.N.Y. July 1, 2024) (citing *Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 229 (2d Cir. 2016)).  To form a valid contract under New York law, there must be a "meeting of the minds" and "a manifestation of mutual assent." *Starke v. SquareTrade, Inc.*, 913 F.3d 279, 288-89 (2d Cir. 2019) ("Generally, courts look to the basic elements of the offer and the acceptance to determine whether there was an objective meeting of the minds sufficient to give rise to a binding and enforceable contract.")  For a party to assent to arbitration, s/he must be put on inquiry notice of the arbtiration terms, which requires "actual notice of circumstances sufficient to put a prudent [person] upon inquiry." *Specht v. Netscape Commc'ns Corp.,* 306 F.3d 17, 30 n.14 (2d Cir. 2002) (internal quotation marks omitted). A person is on inquiry notice of terms if they are presented in a" clear and conspicuous" manner. *Starke,* 913 F.3d at 289. When determining whether there was assent to arbitration terms, the Court must assess whether the arbitration provision was "reasonably clear and conspicuous  such that a reasonable person in [allegedly assenting party]'s shoes would have been on inquiry notice of them." *Soliman v. Subway*

6

*Franchisee Advert. Fund Tr.,* Ltd., 999 F.3d 828, 836 (2d Cir. 2021); *Meyer,* 868 F.3d at 74-75.

Reasonable conspicuousness turns on the "design and content of the relevant interface." Starke,

913 F.3d at 289 (analyzing this issue "[i]n the context of web-based contracts" *Soliman,* F.3d 828,

834-35.

When determining whether a disclosure is "clear and conspicuous," courts consider various

factors, including the size of the disclosure.  *See, Soliman,* 999 F.3d 828, 835 (failure to present

evidence of the size of the disclosure construed against the moving party). This requires looking

to the disclosure "in the context of the entire advertisement", including whether the differing font

size is too small to be conspicuous and/or whether the surrounding information in different colors

and fonts "generally obscure[s] the message". *Id.,* 999 F.3d 828, 836. In *Soliman,* the Second

Circuit held the below image did not have a sufficiently clear and conspicuous disclosure of the

arbitration terms, when contrasting the small black font featuring the "terms of use" with the large

colorful images and text of the balance of the Subway advertisement copied below:



When considering whether the above advertisement contained a sufficiently clear and conspicuous

disclosure of the arbitration terms in *Soliman*, the Second Circuit held: "We have significant doubt,

looking at the small-print disclaimer box in the context of the advertisement as a whole, as to

7

whether a reasonable consumer would have noticed the reference to terms and conditions at all."

*Soliman*, 999 F.3d 828, 836.

As articulated below, the arbitration disclosure here is sufficiently less clear than Subway's

arbitration language in *Soliman*:

| | TVM's alleged arbitration agreement | *Soliman v. Subway*, 999 F.3d 828 (2nd Cir. 2021) |
|---|---|---|
| Image | | |
| Color of text of arbitration language and color of background | Grey text on white background | Black text on white background |
| Size of text of arbitration language | Significantly smaller than advertisement text | Significantly smaller than advertisement text |
| Placement of arbitration language in context of the rest of advertisement | Bottom of page, below orange "continue" button and not directly below the advertised giftcard. | Next to Subway logo and directly below advertisement text. |

Under Second Circuit precedent, the arbitration language is not sufficiently clear and

conspicuous in the context of the balance of the website to compel arbitration.

**C.  Interest Failed to Meet its Burden to Compel Arbitration.**

In Mr. Hoggart's declaration in support of its motion to compel arbitration, Hoggart asserts

TVM was the operator of the website primerewardspot.com, which is why he moves to compel

arbitration on behalf of TVM. Hoggart Decl. ¶ 3. Hoggart also makes the naked conclusory

8

assertion that Interest Media is a beneficiary of the arbitration agreement and moves to compel arbitration on behalf of Interest:

> The Arbitration Agreement expressly extends to 'Covered Parties,' which are defined to include 'the Company and against its parents, subsidiaries, affiliates, predecessors, successors, assigns, agents, service providers, licensors, vendors, marketing partners, and any other third parties that contact you in connection with your opt-in or the services offered.' **Interest Media satisfies this definition and, therefore, is a Covered Party.**

Hoggart Decl. ¶ 11 (emphasis added).

Hoggart does not bother to articulate whether Interest is a "subsidiary", "affiliate", "marketing partner" or another has some other affiliation with TVM. Moreover, Interest cannot be said to "contact [Kontas] in connection with [his] opt-in", because Kontas only submitted a form *after* he received the underying text messages. Kontas Decl. ¶¶ 15, 19. While Kontas alleges Intrest and TVM are a joint enterprise, both companies deny this. (*See* Defendant's Memorandum, pp. 13-17, seeking to dismiss Interest Media from the case on jurisdictional grounds and denying a joint enterprise). Moreover, Defendants' motion to dismiss must be read with inferences drawn against them as the moving parties, and Defendants bear the burden of proof. The naked and conclusory statement that Interest Media is a "covered party" to the alleged arbitration agreement- without articulation or documentary evidence- is insufficient to meet its burden of proof. Accordingly, Interest fails to compel arbitration.

## IV.   KONTAS HAS ARTICLE III STANDING.

Defendants also argue the complaint does not sufficiently allege the harm from the unwanted texts to be traceable to Defendants. (ECF No. 16, p. 2.) However, courts routinely hold allegations of receiving text messages which lead the consumer to a website, is sufficient at the pleading stage, to create an inference that the entity responsible for that website is also the entity responsible for those telemarketing messages. *See, e.g. Bank v. Digit. Media Sols., Inc.*, No. 22-

9

CV-293(EK)(LB), 2023 U.S. Dist. LEXIS 18696, at *2-3 (E.D.N.Y. Feb. 3, 2023) (denying motion to dismiss where text messages featured links directing to websites owned by the defendant); *See also, Miholich v. Senior Life Ins. Co.*, No. 21-cv-1123-WQH-AGS, 2022 U.S. Dist. LEXIS 23981, at *12 (S.D. Cal. Feb. 10, 2022) (denying motion to dismiss on 12(b)(1) traceability grounds, where "the content of the text messages in this case—allegedly advertising financed leads and linking to Defendant's webinar making similar offers—supports an inference that Defendant sent the text messages to Plaintiff"); *See, also Abboud v. Circle K Stores Inc.*, 731 F. Supp. 3d 1094 (D. Ariz. Apr. 24, 2024) ("messages included a link to Defendant's website … make it plausible that the purpose of the text messages was to encourage Plaintiff to sign up to receive offers for future shopping at Circle K"). In the complaint, Kontas pleads a concrete injury when he alleges the spam texts caused him "frustration, annoyance, irritation and a sense that his privacy had been invaded by Defendants." (ECF No. 1, ¶ 36.) Kontas then describes in detail the text messages he received, and how they linked to websites operated by Defendants. (*Id.*, ¶¶ 37-44.) The complaint plausibly alleges the text messages are traceable to Defendants.

Defendants next make the regrettable and oft-rejected argument that Plaintiff lacks Article III standing because he is a "repeat TCPA filer" who "undertook a calculated investigative effort to identify potential defendants", citing *Stoops v Wells Fargo Bank, N.A.*, 197 F Supp 3d 782 (WD Pa 2016)- a case resolved on summary judgment after the record showed the plaintiff owned 35 phones and was manufacturing claims.  (ECF No. No. 16, pp. 2-3.) While Defendants will not be able to demonstrate any impropriety by Kontas as occurred in *Stoops*, the cases are procedurally distinguishable, in that here, the parties remain at the pleading stage, whereas in Stoops, discovery uncovered a fraudulent scheme by the plaintiff and was resolved on summary judgment. There is nothing remotely similar to the scheme carried out by Ms. Stoops, here. Mr. Kontas is a journalist,

who has done nothing improper, and is being attacked simply for exercising his rights under the TCPA through the statutory mechanism established by President George H.W. Bush and a bipartisan congress. *See* Konas Decl. ¶¶ 6-10; *See, Noviello v. Holloway Funding Grp.*, 2023 U.S. Dist. LEXIS 30591, at *8 (N.D. Tex. Feb. 23, 2023) ("using the TCPA to sue on the kind of conduct that the statute targets, and doing so to pursue statutory damages, is not a misuse of the statute.")

Defendants efforts at casting Kontas- who has filed three cases other than this matter- as a "serial plaintiff" are unfortunate. (*See* Kontas Decl. ¶ 4.) Virtually all Americans receive unwanted telemarketing calls. *Barr v. Am. Ass'n of Political Consultants*, 140 S. Ct. 2335, 2343 (2020) ("Americans passionately disagree about many things. But they are largely united in their disdain for robocalls.") Out of hundreds of millions of unwanted telemarketing communications, five million Americans complain each year to the FCC or FTC each year,[1] and only a few thousand file suit under the TCPA. Knowledge of the TCPA is a prerequisite to filing suit. Experience with the TCPA does not diminish Article III standing. Nonetheless, there have been numerous misguided attacks on plaintiffs who have filed multiple TCPA cases, which attack Article III standing. Fortunately, as set forth below, those attacks have been rejected *ad nauseum* by courts in the Second Circuit, and throughout the country.

Allegations that a plaintiff received a single unwanted call or text is sufficient to establish a "concrete injury" for Article III standing purposes. *See e.g. Melito v. Experian Mktg. Sols., Inc.*, 923 F.3d 85, 93 (2d Cir. 2019) (finding that plaintiffs need not allege any additional harm beyond the receipt of unsolicited text message advertisements to establish a concrete injury cognizable under the TCPA); *see also Zani v. Rite Aid Headquarters Corp.*, 246 F. Supp. 3d 835, 847 (S.D.N.Y.

---

[1]  Federal Trade Comm'n, FTC Issues Biennial Report to Congress on the National Do Not Call Registry (Jan. 5, 2022) available at: https://www.ftc.gov/news-events/news/press-releases2022/01/ftc-issues-biennial-report-congress-national-do-not-call-registry.

2017) (Nathan, J.) (allegations of a single unwanted call in violation of the TCPA is sufficient to create Article III standing).  *Susinno v. Work Out World Inc.,* 862 F.3d 346, 351 (3d Cir. 2017) ("in asserting 'nuisance and invasion of privacy' resulting from a single prerecorded telephone call, [the] complaint asserts the very harm that Congress sought to prevent, arising from prototypical conduct proscribed by the TCPA"); *Hall v. Smosh Dot Com, Inc*., 72 F.4th 983, 991 (9th Cir. 2023) (receipt of two or more text messages to number on the Do-Not-Call registry sufficient injury to create article III standing). By alleging annoyance from unwanted spam text messages after registration of his number on the National Do-Not-Call Registry, Kontas has alleged the specific harm the TCPA was enacted to prevent.

The fact Kontas has filed several other cases and knows how to identify the senders of spam text messages, does not negate his Article III standing, or otherwise dissolve his statutory rights. *Mey v. Venture Data, LLC*, 245 F. Supp. 3d 771, 783 (N.D.W. Va. 2017) (that the plaintiff has "telephone answering and recording equipment which is more sophisticated than that of the average consumer . . . [t]his does not deprive the plaintiff of standing any more than the purchase of a burglar alarm would indicate that the homeowner wanted her house to be broken into"); *Perrong v. Victory Phones LLC*, No. 20-5317, 2021 U.S. Dist. LEXIS 132404, at *11 (E.D. Pa. July 15, 2021) ("The Court declines to give Victory Phones a 'free pass' simply because they robo-dialed a caller aware of his rights under the TCPA"); *Cunningham v. Rapid Response Monitoring Servs*., 251 F. Supp. 3d 1187, 1195 (M.D. Tenn. 2017) ("[n]othing in the Constitution . . . requires a plaintiff to be a naif.  Litigation is not college athletics: there is no 'amateurs only' rule").

Defendants also insinuate that Kontas's engagement with the links from the text message *a month and a half after the text messages were sent* (which he did to identify the source of the anonymous spam text messages), must mean that he invited the text messages before they were

12

sent. (Defendants' Memorandum, pp. 11-12.) This argument fails. *See, e.g. Perrong v. Total Ins. Brokers, LLC*, No. 20-1905, 2021 WL 3036467, \*4 (M.D. Fla. Apr. 2, 2021) ("there is nothing wrong with a plaintiff—who receives an unwanted robocall—engaging the caller in order to determine the caller's identity"); *Clough v. Frontier Revenue*, 2019 U.S. Dist. LEXIS 102436, \*15-16 (D.N.H. 2019) ("that [the plaintiff] made misrepresentations when talking to NTE and other telemarketers **after receiving the text message** is not relevant to his contention that the defendants sent him the text message without his prior consent" (emphasis added)); *Spurlark v. Dimension Serv. Corp.*, 2022 U.S. Dist. LEXIS 120468, at \*7 (S.D. Ohio July 7, 2022) ("that someone prepared to feign interest in their product to remove the mask of anonymity behind disembodied robocalls, has no bearing on whether he, and other members of the putative class, received illegal calls for which Defendants are liable.")

Kontas did not invite the text messages at issue. (Kontas Decl. ¶¶ 13, 15, 19.) While Defendants will not be able to demonstrate there was prior express consent for the text messages before they were made, even if they were to try raising prior express consent, that is an affirmative defense to be adjudicated at trial or summary judgment. Here, at the pleading stage, allegations are to be taken as true and inferences drawn in favor of the plaintiff. In *Bank v. Gohealth*, No. 19-CV-5459 (MKB) (CLP), 2021 U.S. Dist. LEXIS 89871 (E.D.N.Y. May 11, 2021), the Eastern District of New York rejected a TCPA defendant's efforts to dismiss the case on 12(b)(1) grounds, finding the defendant's proposed inferences to be at odds with the standard of review at the pleading stage:

> At this stage in the proceeding, where there has been no discovery or evidence submitted by either side, the Court is constrained not only to accept the truth of the plaintiffs' jurisdictional allegations, but also to construe all reasonable inferences to be drawn from those allegations in plaintiffs' favor. The Court therefore accepts as true, Plaintiff's allegation that he received the Call on a residential telephone number that he regularly shared with the subscriber of the number, that a prerecorded advertisement played when Plaintiff answered the Call,

and that the Call[] [was] not preceded by the written consent of anyone who had the legal authority to provide such consent.

*Bank v. Gohealth*, No. 19-CV-5459 (MKB) (CLP), 2021 U.S. Dist. LEXIS 89871 (E.D.N.Y. May 11, 2021), at *21 (internal citations and quotations omitted). Here, Kontas alleges he did not consent to receiving the text messages, that his phone number was registered on the National Do-Not-Call Registry for more than 30 days and that he found the texts to be irritating. Kontas therefore has alleged a concrete injury.

Defendants also contend Kontas lacks standing because the text messages are not traceable to Defendants. (Defendants' Memorandum, p. 10.) "The traceability requirement for Article III standing means that 'the plaintiff must demonstrate a causal nexus between the defendant's conduct and the injury.' *Chevron Corp. v. Donziger*, 833 F.3d 74, 120 (2d Cir. 2016) (quoting *Rothstein v. UBS AG*, 708 F.3d 82, 91 (2d Cir. 2013)). "The fact that the defendant's conduct may be only an 'indirect[]' cause is 'not necessarily fatal to standing.'" *Id.* at 121 (quoting *Simon v. Eastern Kentucky Welfare Rights Organization*, 426 U.S. 26, 44, 96 S. Ct. 1917, 48 L. Ed. 2d 450 (1976)). "A defendant's conduct that injures a plaintiff but does so only after intervening conduct by another person, may suffice for Article III standing." *Id.* (citing *Rothstein*, 708 F.3d at 92.) "The traceability requirement focuses on whether the asserted injury could have been a consequence of the actions of the defendant rather than being attributable to the 'independent' acts of some other person not before the court." *Id.* (citing *Lujan*, 504 U.S. at 560); *see also Connecticut*, 582 F.3d at 345 (explaining that the traceability requirement "ensures that there is a genuine nexus between a plaintiff's injury and a defendant's alleged . . . conduct, and is in large part designed to ensure that the injury complained of is not the result of the independent action of some third party not before the court" (quoting *Friends of the Earth, Inc. v. Gaston Copper Recycling Corp.*, 204 F.3d 149, 161-62 (4th Cir. 2000))).

14

Defendants contend Kontas fails to sufficiently allege the text messages are traceable to Defendants, and Kontas supposedly relies on a "multi-step inference chain." (Defendants' Memorandum, p. 11.) However, courts routinely hold allegations of receiving text messages which lead the consumer to a website, is sufficient at the pleading stage, to create an inference that the entity responsible for that website is also the entity responsible for those telemarketing messages. *See, e.g. Bank v. Digit. Media Sols., Inc.*, No. 22-CV-293(EK)(LB), 2023 U.S. Dist. LEXIS 18696, at *2-3 (E.D.N.Y. Feb. 3, 2023) (denying motion to dismiss where text messages featured links directing to websites owned by the defendant); *See also, Miholich v. Senior Life Ins. Co.*, No. 21-cv-1123-WQH-AGS, 2022 U.S. Dist. LEXIS 23981, at *12 (S.D. Cal. Feb. 10, 2022) (denying motion to dismiss on 12(b)(1) traceability grounds, where "the content of the text messages in this case—allegedly advertising financed leads and linking to Defendant's webinar making similar offers—supports an inference that Defendant sent the text messages to Plaintiff"); *See, also Abboud v. Circle K Stores Inc.*, No. CV-23-01683-PHX-DWL, __ F.Supp.3d __ 2024 U.S. Dist. LEXIS 74416, at *14-15 (D. Ariz. Apr. 24, 2024) ("messages included a link to Defendant's website … make it plausible that the purpose of the text messages was to encourage Plaintiff to sign up to receive offers for future shopping at Circle K"). In the aforementioned *Bank v. GoHealth* case, the defendant argued the calls to the plaintiff were not "treaceable" to the defendants because there were call transfers and intervening acts before the call resolved to the defendant. *Bank v. Gohealth*, 2021 U.S. Dist. LEXIS 89871, at *24-25 (E.D.N.Y. May 11, 2021). However, the Eastern District of New York rejected that argument at the pleading stage, because even with intervening acts, there were allegations plausibly tying the company to which the call was ultimately transferred (the defendant) to the calls by a third-party, even if those connections were insufficient to establish liability:

15

> Plaintiff plausibly alleges that his injury is fairly traceable to Defendant's conduct because Plaintiff was eventually transferred to a licensed agent of Defendant and while Plaintiff was on hold to be transferred to Defendant's agent, an automated message instructed Plaintiff to call a phone number associated with Defendant to be placed on Defendant's do-not-call list. Plaintiff therefore sufficiently alleges that his harm was indirectly caused by Defendant's conduct, which is sufficient to confer Article HI standing, although Judge Pollak ultimately found that the tenuous nature of the alleged causation was inadequate to support vicarious liability….

*Bank v. Gohealth*, 2021 U.S. Dist. LEXIS 89871, at *24-25.

In the complaint and Kontas's declaration, Kontas describes in detail the text messages he received, and how they linked to websites operated by Defendants. (Compl., ¶¶ 37-44; *See also* Kontas Decl. ¶¶ 16-25). Even if the text messages were sent by a third-party, they were clearly for the benefit of Defendants and drove traffic to their websites. The complaint plausibly alleges the text messages are traceable to Defendants.

## V.      THIS COURT HAS PERSONAL JURISDICTION OVER INTEREST MEDIA.

### A.  Standard for a Motion to Dismiss for Lack of Personal Jurisdiction Under Fed. R. Civ. P. 12(b)(2).

The "showing a plaintiff must make to defeat a defendant's claim that the court lacks personal jurisdiction over it 'varies depending on the procedural posture of the litigation.'" *Dorchester Fin. Sec., Inc. v. Banco BRJ, S.A.*, 722 F.3d 81, 84 (2d Cir. 2013) (quoting *Ball v. Metallurgie Hoboken-Overpelt, S.A.*, 902 F.2d 194, 197 (2d Cir. 1990)). "Prior to discovery, a plaintiff challenged by a jurisdiction testing motion may defeat the motion by pleading in good faith, legally sufficient allegations of jurisdiction." That is, where, as here, there has been no jurisdictional discovery, "the plaintiff need only make a prima facie showing that the court possesses personal jurisdiction over the defendant." *Edmar Fin. Co., LLC v. Currenex, Inc.,* No. 21-cv-6598 (LAK), 2024 U.S. Dist. LEXIS 107213, at *3 (S.D.N.Y. June 17, 2024) (citing *Ball,* 902 F.2d 194, 197.) New York's long-arm statute permits personal jurisdiction over a non-

domiciliary who transacts business within the state or contracts to supply goods or services in the state. (N.Y. C.P.L.R. § 302(a)(1)).

### B. This Court has Personal Jurisdiction Over Interest Media.

Because "joint participation in a partnership or joint venture establishes 'control' Sufficient to make each partner or joint venturer an agent of the others, a showing of joint control of a business enterprise may be sufficient to establish personal jurisdiction." *Fox Corp. v. Media Deportes Mexico,* 801 F. Supp. 3d 217, 226 (S.D.N.Y. 2025) (Rakoff, J.) (citing *CutCo Indus., Inc. v. Naughton,* 806 F.2d 361, 365 (2d Cir. 1986).) "[I]n determining whether a joint venture exists for jurisdictional purposes, courts have focused on the realities of the relationship in question rather than the formalities of agency law." *Fox Corp.,* 801 F. Supp. 3d 217, 226 (S.D.N.Y. 2025).

A joint enterprise requires: (1) an agreement, express or implied, among the members of the group; (2) a common purpose to be carried out by the group; (3) a community of pecuniary interest in that purpose, among the members; and (4) an equal right to a voice in the direction of the enterprise, which gives an equal right of control. *Ajinomoto Co. v. CJ Cheiljedang Corp.,* No. 1:16-cv-03498 (MKV), 2021 U.S. Dist. LEXIS 184945, at *16 (S.D.N.Y. Sep. 27, 2021) citing *Akamai Techs., Inc. v. Limelight Networks*, 797 F.3d 1020, 1023 (Fed. Cir. 2015). Where parties have intertwined business operations and personnel, retain the same counsel and submit joint pleadings, where a court has personal jurisdiction over one of the parties, it may exercise personal jurisdiction over both as a joint venture. *See Fox Corp.,* 801 F. Supp. 3d 217, 227. In *Fox Corp.,* Judge Rakoff exercised personal jurisdiction over the foreign company Mexico Sports Distribution due to the joint enterprise with New York domiciliary Fox Sports Mexico:

> MDM and MSD are indirect subsidiaries of the same ultimate parent…share common leadership in Grupo Lauman's chief executive, Arroyo, who is also president of MSD and "Fox Sports Mexico"; have filed joint pleadings and are represented by the same counsel in the courts of Mexico; have, either in their own

17

> names or that of their joint venture "Fox Sports Mexico," authored joint statements in the press; and do not appear to have asserted independent legal interests in their dispute with plaintiffs. For these reasons, the Court concludes that MDM and MSD have a "legal relationship" that plainly exceeds a pledge of "mutual assistance" or the existence of "shared goals.

*Fox Corp.,* 801 F. Supp. 3d 217, 227.

Much like the overlap in officers between Fox Sports Mexico and Mexico Sports Distribution in *Fox Corp.* here Kontas articulates from "their respective business filings, TVM and Interest share multiple mailing and office addresses, as well as multiple corporate officers, including Jeremy Matthew Hogatt, Kent Freeburg, and Mike Stephens." (Complaint, ¶ 22.) Moreover, in response to the factual attack from Interest on jurisdiction, Kontas has presented to the Court public filings which demonstrate Jeremy Hoggart, the president of TVM (and its affiant) is also the president of Interest Media- the exact dynamic as in *Fox Sports*. (*See* Kontas Decl. Ex. A, 2025 Missouri SOS Report for Interest Media); *See, Fox Corp.,* 801 F. Supp. 3d 217, 227. It is clear both companies, Interest Media and TVM, were involved in the text message campaign here. After clicking the links from the subject text messages, and then clicking on the "lucky number" on the webpage to which the link led Kontas's web-browser, the browser was directed to a tracking page go2cloud.org- which is owned by the parent company of Interest Media- before being directed to the primerewardspot website operated by TVM. (Compl. ¶¶ 41-44; *See* Hoggart Decl. ¶ 3.) Because both Defendants' websites were featured in the chain generated from the text messages and the companies are owned and operated by the same people, Plaintiff understands and alleges the text messages were made by or on behalf of Defendants as a joint enterprise (Compl. ¶¶ 22-23, 37-45; Kontas Decl. ¶¶ 11-25.)[2]

---

[2] Moreover, as in *Fox Sports*, the Defendants here have hired a single law firm to represent their interests jointly and even rely on the same affiant to compel arbitration. (*See generally*, Defendants' motion, Hoggart Decl.); *See Fox Sports,* 801 F. Supp. 3d 217, 227 (noting the defendant and objecting third-party "have filed joint pleadings and are represented by the same counsel…")

Those facts create an inference Interest Media and TVM have common pecuniary goals from their marketing/data-mining websites and spam text message operation, and the marketing operation was carried out jointly (operated by the same people). While Plaintiff does not identify all of the minute details of Defendants' business relationship, at the pleading stage "where the facts are peculiarly within the possession and control of the defendant, or where the belief is based on factual information that makes the inference of culpability plausible." *Carrodine v. Flatiron Media, LLC*, No. 22-CV-9660 (JMF), 2023 U.S. Dist. LEXIS 210182, at *3 n.1 (S.D.N.Y. Nov. 27, 2023) (Furman, J.) (citing *Arista Records LLC v. Doe 3*, 604 F.3d 110, 120 (2d Cir. 2010).) By engaging in a joint enterprise with TVM, Interest Media is subject to personal jurisdiction.

### C. If the Court Finds an Insufficient Basis to Exercise Jurisdiction Over Interest Media, Plaintiff Seeks Leave to Conduct 60 Days of Jurisdictional Discovery.

To the extent the Court finds there to be insufficient basis to exercise personal jurisdiction over Interest Media, Plaintiff seeks leave to conduct 60 days of jurisdictional discovery relating to Interest Media's contacts with New York, including its relationship with TVM, after which the Parties would submit supplemental briefing.

### VI.    THE COMPLAINT STATES A CLAIM UPON WHICH RELIEF CAN BE GRANTED.

#### A.  Standard for motion to dismiss under Fed. R. Civ. P. 12(b)(6).

To overcome a motion to dismiss under Rule 12(b)(6), a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal,* 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) (citing *Twombly*, 550 U.S. at 556). "The Court must accept as true all well-

19

pleaded factual allegations in the complaint, and 'draw [ ] all inferences in the plaintiff's favor.'" *Goonan v. Fed. Rsrv. Bank of N.Y.*, 916 F. Supp. 2d 470, 478 (S.D.N.Y. 2013).

### B. The Text Messages Were "Solicitations".

Defendants argue the offending text messages were not "solicitations" as defined by the TCPA. (Defendants' Memorandum, pp. 18-20.) As set forth below, that argument fails.

In the context of the TCPA, a "telephone solicitation" is defined as "the initiation of a telephone call or message for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services, which is transmitted to any person." 47 U.S.C. § 227(a)(4); 47 C.F.R. § 64.1200(f)(15). In *Chesbro v. Best Buy Stores, L.P.,* 705 F.3d 913, 916-18 (9th Cir. 2012), the Ninth Circuit held a phone call alerting recipient to expiration of his reward points was telephone "solicitation", as the call was to encourage the plaintiff to spend reward points at the defendant's stores. *Id.* ("the calls encouraged the listener to make future purchases at Best Buy. Neither the statute nor the regulations require an explicit mention of a good, product, or service where the implication is clear from the context.") The absence of explicit sales pitches in the text messages does not negate the inference that the texts are for solicitation purposes, if it can be inferred that is the objective. *Abboud v. Circle K Stores Inc*., 731 F. Supp. 3d 1094, 1103 (D. Ariz. 2024) ("Although the messages did not expressly seek to induce Plaintiff to purchase a particular product, it is difficult to imagine why Defendant would repeatedly encourage her to sign up for offers other than to encourage her to make future purchases of goods at Defendant's stores based on those offers.") Here, the text messages are promoting "sweepstakes" and rewards, and asking that the texted party provide their data. (*See* Compl. ¶¶ 37-45.) Plaintiff sufficiently alleges the text messages were solicitations. [3]

---

[3] If the Court believes the allegations regarding solicitation is insufficient, Plaintiff seeks leave to file a first amended complaint.

20

### C. Plaintiff is a residential subscriber.

Defendants contend Kontas does not state a viable claim under section 227(c) of the TCPA because he received the messages on a cell phone, rather than a landline, which they claim precludes him from being a "residential subscriber." (Defendant's Memorandum, pp. 17-18.) As set forth below, that argument falls short.

Section 227(c)(1) of the TCPA provides "the [Federal Communications] Commission shall initiate a rulemaking proceeding concerning the need to protect residential telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object." 47 U.S.C. § 227(c)(1). Consistent with that mandate, in 2003 the FCC clarified the do-not-call rules' protection of "residential subscribers" includes users of wireline and wireless phones alike:

> we believe it is more consistent with the overall intent of the TCPA to allow wireless subscribers to benefit from the full range of TCPA protections…Therefore, we conclude that wireless subscribers may participate in the national do-not-call list. As a practical matter…**we will presume wireless subscribers who ask to be put on the national do-not-call list to be 'residential subscribers.'**

*In re Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991* ("2003 FCC Order"), 18 F.C.C. Rcd. 14014, 14148 (2003) (internal citations omitted and emphasis added). Thereafter, the FCC formally codified the protection of cell phone users in the do-not-call rules in the Code of Federal Regulations. 47 C.F.R. § 64.1200(e).[4]

Moreover, through its affirmative acts, Congress adopted the FCC's rules and regulations recognizing that the TCPA's DNC protections apply to cell phones. Specifically, after the FCC issued its 2003 Order, Congress amended the TCPA at least *four times*. *See* PUB. L. NO. 109-21 (July 9, 2005); PUB. L. NO. 111-331 (December 22, 2010); PUB. L. NO. 114-74 (November 2,

---

[4] [T]he rules set forth in paragraph (c) . . . of this section are applicable to any person or entity making telephone solicitation or telemarking calls to wireless telephone numbers to the extent described in the [FCC's 2003 TCPA Order]."

2015); PUB. L. NO. 116-105 (December 30, 2019). In none of those instances did Congress upset the existing language on "residential subscribers" or the direction to the FCC to promulgate rules protecting same. "Congress is presumed to be aware of an administrative or judicial interpretation of a statute and to adopt that interpretation when it re-enacts a statute without change." *United States v. Burkholder, 816 F.3d 607, 617* (10th Cir. 2016) (citing *Dep't of Hous. & Urban Dev. v. Rucker*, 535 U.S. 125, 133 n.4, (2002)).  Through its amendments that left the do-not-call rules untouched, Congress adopted the FCC's interpretation of "residential subscriber." While Defendants may believe the FCC overstepped its authority, Congress disagrees.

Moreover, an overwhelming majority of courts have ruled consistently with the that cell phone users with numbers registered on the National Do-Not-Call Registry can have the protections of the TCPA afforded to "residential subscribers."  The sole Circuit Court of Appeals to address this issue recently ruled consistently with the FCC's holding. *Chennette v. Porch.com, Inc.*, 50 F. 4th 1217, 1223-26 (9th Cir. 2022) ("[a]t the motion to dismiss stage…plaintiffs' phones are presumptively residential for purposes of § 227(c).") *Id.* at 1225 (emphasis added).  Virtually all district courts agree, including seemingly all district courts within the Second Circuit. *See, infra*.

Recently*,* the District of Connecticut rejected a TCPA defendant's attempt to remove cell phones from the protections of the do-not-call registry, holding that a "residential subscriber" can be the user of a landline or a cell phone:

> I find this reasoning, based on the plain meaning of the statutory text and not on deference to any agency interpretation, persuasive. I also note that the plain language of the statute does not, at any point, equate "residential telephone" with "landline." Thus, "[c]onsistent with numerous courts who have addressed this issue, I find that a 'residential subscriber' is not limited to a residential landline but rather can include a person who uses a cell phone for personal use.

*Wilson v. Easy Spirit, LLC,* No. 3:25-CV-112 (SFR), 2026 U.S. Dist. LEXIS 69059, at *10 (D. Conn. Mar. 31, 2026); *See also, Mejia v. Time Warner Cable, Inc.,* No. 15-CV-6445 (JPO), 2017

22

U.S. Dist. LEXIS 120445, at *46 (S.D.N.Y. Aug. 1, 2017) (Oetken, J.) ("the Court sees no reason that this compelling [privacy] interest does not also extend to cell phones"); *Lenorowitz v. Mosquito Squad of Fairfield & Westchester Cty.*, No. 3:20-cv-01922 (JBA), 2023 U.S. Dist. LEXIS 50160, at *20 (D. Conn. Mar. 23, 2023) (cell phone users presumed residential subscribers); *Rose v. New TSI Holdings, Inc.*, No. 21-CV-5519-JPO, 2022 WL 912967, at *2 (S.D.N.Y. Mar. 28, 2022); *Atkinson v. Choice Home Warranty*, 2023 WL 1661682023 U.S. Dist. LEXIS 5570, *12 (D.N.J. 2023); *Champion v. Credit Pros Int'l Corp.*, 2023 WL 3452354, 2023 U.S. Dist. LEXIS 84427, *6 (D.N.J. May 15, 2023); *Valdes v. Century 21 Real Est., LLC*, No. 2:19-05411, 2019 WL 5388162, at *3 (D.N.J. Oct. 22, 2019); *Mestas v. CHW Grp. Inc.*, 508 F. Supp. 3d 1011, 1028 (D.N.M. 2020); *Blalack v. RentBeforeOwning.com*, No. CV21-09048-JAK, 2022 WL 7320045, at *2-4 (C.D. Cal. Oct. 11, 2022); *Ewing v. CSOLAR*, No. 22-CV-0720-WQH, 2022 WL 4449326, at *3-4 (S.D. Cal. Sept. 22, 2022); *Noviello v. Holloway Funding Grp.*, No. 3:22-cv-52-BN, 2023 WL 128395, 2023 U.S. Dist. LEXIS 3060, * 15 (N.D. Tex. Jan. 9, 2023); *Spurlark v. Dimension Serv. Corp.*, No. 2:21-cv-3803, 2022 WL 2528098, at *4 (S.D. Ohio July 7, 2022)*; Gill v. Align Tech.*, No. 21-CV-631-JPS, 2022 WL 1540016, at *3 (E.D. Wisc. May 16, 2022); *Miholich v. Senior Life Ins. Co.*, No. 21-CV-1123-WQH, 2022 WL 1505865, at *3-4 (S.D. Cal. May 12, 2022; *Mantha v. Quotewizard.com*, LLC, No. 19-12235-LTS, 2022 WL 325722, at *15-16 (D. Mass. Feb. 3, 2022); *McDermet v. DirecTV*, LLC, No. 19-11322-FDS, 2021 WL 217336, at *12 (D. Mass. Jan. 21, 2021); *Strange v. ABC Co.,* 2021 WL 798870, at *3-4 (W.D. La. Mar. 1, 2021); *Hodgin v. Parker Waichman LLP*, No. 14-CV-733-DJH, 2015 WL 13022289, at *3-4 (W.D. Ky. Sept. 30, 2015); *Clemons v. Bradford O'Neil Agency, LLC*, No. 21-CV-00678-SRC, 2021 WL 6062491, at *3 (E.D. Mo. Dec. 22, 2021).[5]

---

[5] This is just a partial list of courts that have held the do-not-call regulations apply to cell phones.

Where 47 U.S.C. § 227(c) protects "residential subscribers" regardless of the technology their phones use, Defendants grasp for straws to impose such a technological limitation to strip consumers of their privacy rights. In that effort, Defendants misleadingly cite to a magistrate judge's recommendation in *Gaker v. Q3M,* 2023 WL 2472649 (W.D.N.C. Feb. 7, 2023), without acknowledging the recommendation was **not adopted**.  (Defendants' memorandum, pp. 17-18.) Instead of allowing the district court to rule on the magistrate's recommendations or the plaintiff's objections, the defendants in *Gaker* offered judgment to the plaintiff, which was accepted and entered by the court.  See *Gaker v. Q3M Ins. Sols.*, 2023 WL 2472649 (W.D.N.C. Apr. 26, 2023). Furthermore, even if the *Gaker* recommendation were law, it would be an extreme outlier position at odds with the overwhelming weight of authorities, and binding FCC regulations. See *supra*. Even more dubiously, Defendants relies on dicta from a footnote in *Shelton v. Fast Advance Funding, LLC*, 378 F. Supp. 3d 356, 363 n.7 (E.D. Pa. 2019).  Doc. No. 26, p. 9.  The *Shelton* court, however, actually entered judgment for the plaintiff for calls placed to his cell phone.  *Id*.[6] Defendants hang their hat on a footnote where the *Shelton* court (notwithstanding its judgment for the plaintiff) "questioned" whether congress and the FCC intended "residential subscribers" to include cell phone users. *Shelton*, 378 F. Supp. 3d at 363 n. 7. If there was doubt as to whether the *Shelton* court's footnote was mere dicta, the Eastern District of Pennsylvania left no doubt in subsequent decisions. See *Dudley v. Vision Solar, LLC,* 2021 WL 3077557, at *5 (E.D. Pa. July 21, 2021) (denying a motion to dismiss and holding that "[t]he consensus in this Circuit is that Do Not Call claims may apply to cell phones"); *Marks v. Unique Lifestyle Vacations, LLC*, No. 20-4915-KSM, 2021 WL 5495778 (E.D. Pa. Nov. 22, 2021) (same).  With dozens of cases that follow

---

[6] The *Shelton* court's entry of judgment for the plaintiff was affirmed by the Third Circuit. *Shelton v. Fast Advance Funding, LLC*, 805 Fed. App'x 156, 159 (3d Cir. 2020).

Congress and the FCC to protect consumers and their privacy regardless of the technology by which a given phone operates, the Court should not follow the outlier splinter of out-of-circuit courts which impose a technological limitation on "residential subscribers." Kontas alleged he uses his cell phone for residential purposes and was registered on the Do-Not-Call Registry more than 30 days before the text messages. (Compl. ¶¶ 26-27.) That is sufficient at the pleading stage.

### D.  In the Alternative, Plaintiff Seeks Leave to Amend

While Plaintiff believes he provided sufficient factual allegations in the Complaint, to the extent the Court believes the operative Complaint to fall short of the requirements of Rule 8, Plaintiff seeks leave to file a First Amended Complaint.

### VII.   CONCLUSION

For the reasons stated above, Plaintiff Richard Kontas respectfully requests Defendants Third Victory Media, LLC and Interest Media, Inc.'s motion to compel arbitration and/or dismiss be denied.

<div style="margin-left:40%">

Respectfully submitted,

KIMMEL & SILVERMAN, P.C.

*/s/ Jacob U. Ginsburg*
Jacob U. Ginsburg, Esq. (phv)
Craig T. Kimmel
30 East Butler Ave.
Ambler, PA 19002
Phone: (267) 468-5374
Facsimile: (877) 788-2864
Email: jginsburg@creditlaw.com
        teamkimmel@creditlaw.com

</div>

Dated: May 27, 2026